STATE OF HAWAII, Plaintiff-Appellee, *v.* HILARRION KALANI, Defendant-Appellant

NO. 8196

(CRIMINAL NO. 2136)

SEPTEMBER 1, 1982

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE VITOUSEK
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY HEEN, J.

Defendant appeals his conviction of two counts of Burglary in the First Degree, Hawaii Revised Statutes (HRS) § 708-810 (1976). We affirm.

The appeal raises the following questions:

I. Whether defendant's confession should have been suppressed on the following grounds:

A. Because his arrest six hours previously was not based on probable cause and therefore his detention was illegal.

B. Because the police while informing him of his constitutional right to remain silent, continued to question him after he had responded "no" to the question, "Would you like to tell me what happened or what you know?"

II. Whether the trial court erred in refusing to give defendant's requested instruction to the effect that defendant's confession must be corroborated by independent evidence if the confession supplies a vital element of the offense.

III. Whether the trial court erred in admitting into evidence a "partial" transcript of defendant's tape recorded statement to the police.

## FACTS

On May 23, 1980, Mr. Wayne Yamamoto returned to his home in Kapaa, Kauai, to find that it had been forcibly entered and his rifles and a jade ring were missing. He reported the incident to the police and gave them a description of the rifles. On or about June 2, 1980, Yamamoto received a call from a detective with the Kauai Police Department asking him to come to the station to identify some firearms. At the station, he identified three of his firearms. The

fourth firearm was a rather unusual Italian-made shotgun which Yamamoto recognized as possibly belonging to his friend, Alvin Tanigawa. Tanigawa had previously told Yamamoto that someone had apparently entered his home and taken one of his guns. Yamamoto later called Tanigawa and told him he had seen a shotgun at the police station that looked like it could be Tanigawa's. Yamamoto testified that he did not give anyone permission to enter his home on May 23, 1980. He also testified that defendant's mother had lived in his home until approximately a month before the burglary.

The next day, Tanigawa went to the police station and identified his shotgun. At trial, Tanigawa could not say when his home had been entered and when the shotgun was taken because there was no sign of a forcible entry. He did testify that the defendant, his girl friend, and a baby stayed with him for a couple of weeks in November and December immediately prior to his discovering the gun was missing, and defendant knew where a key to the door was hidden outside the house. He also testified that the gun might have been missing for several weeks because he normally took his guns out only occasionally to oil them.

Prior to their identification by Yamamoto and Tanigawa, the firearms were delivered to the police by Frank Hayden, a Kauai merchant. Hayden told the police that on or about May 27, 1980, he had bought the firearms from two individuals at his place of business. A few days later, two other men came to Hayden's shop and told him that their firearms had been stolen from their homes. Their description of the firearms matched exactly the guns which Hayden had bought. He gave the police a description of the individuals who had sold him the guns and a description of the automobile used by them. On June 4, 1980, Hayden picked photographs of defendant and Timmy Woolsey from a photographic lineup shown to him by Detective Patrick Ornellas.

On June 6, 1980, after having obtained a search warrant, Ornellas and other officers went to the home of Timmy Woolsey to execute it. Upon arrival, they found the defendant and Woolsey both present. During the course of the search, they located other firearms, ammunition clips, and a telescopic gun sight. The defendant and Woolsey were arrested and removed to the police station. After being advised of his constitutional rights, the defendant made an inculpatory statement as to both burglaries. Defendant's state-

ment was recorded on tape. Defendant was indicted on August 21, 1980, on two counts of Burglary in the First Degree.

Prior to trial, defendant moved to suppress his statement on the following grounds:

1. The statements allegedly made by Defendant were taken by the officer without Defendant being advised of his right to remain silent and his right to counsel, in violation of the Constitutions of the United States and the State of Hawaii; and

2. Defendant's Constitutional rights were not knowingly and intelligently waived, and the statements were coerced and involuntary.

The motion was denied.

At trial, defendant requested the following instruction No. 3:

A confession of a Defendant to police should be corroborated by independent evidence if the confession involves a vital element of the offense charged.

The prosecutor may not rely only on the hearsay testimony of police officers to prove its case beyond a reasonable doubt, and he must have other evidence to fulfill the elements of Burglary in the First Degree in this case.

The request was refused by the court over the defendant's objection.

In the course of the trial, the court admitted into evidence a typewritten transcript of the tape recording of the interrogation of the defendant. The transcript was a verbatim account of the detective's explanation to the defendant of his constitutional rights pursuant to the *Miranda* decision[1] and of defendant's confession. This evidence, as well as Detective Ornellas' oral testimony regarding the interrogation and confession, was objected to by defendant as hearsay and as violative of the defendant's constitutional right to remain silent.

## I.

### A.

Defendant contends that the confession was not admissible in evidence and should have been suppressed because it came as the

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

result of his illegal arrest. He claims that the arrest was not based upon probable cause. The prosecutor argues that the question of the warrantless arrest of the appellant was not properly presented to the trial court and should not be reviewed by this court. We agree.

The case of *State v. Cummings,* 49 Haw. 522, 423 P.2d 438 (1967) is highly informative on the law relating to appellate treatment of questions not properly raised in a trial court. In *Cummings,* the defendant at trial objected to the admission of his statement to police on the basis of his irregular arrest and illegal detention. The defendant raised the question initially on appeal but later abandoned it. The Supreme Court posed the question whether it could *sua sponte* consider the question of the admissibility of the oral statements under the principles established in *Escobedo v. Illinois,* 378 U.S. 478, 490, 491 (1964). The court again stated the law to be that it is established by statute[2] and by court rule[3] and decision in criminal as well as civil proceedings that questions not properly raised so as to have been considered and ruled upon by the trial judge will not be considered and passed upon for the first time on appeal. The court found that the objection made in the trial court was improper and was not sufficient to bring to the court's attention the matter of the principles of the *Escobedo* case and held that the alleged error could well be treated as a matter not raised. The court went on, however, to indicate that it has the power *sua sponte* to notice plain errors affecting substantial rights not properly brought to the attention of the trial court nor raised on appeal, and pointed out that erroneous admission of evidence may constitute plain error if a fair trial of the accused was thereby impaired or if it substantially prejudiced the accused.

The case at bar, while not on all fours with the *Cummings* case, is quite similar. In his Motion to Suppress and in his objections to the

---

[2] The court cites Revised Laws of Hawaii § 214-4 (1955) and § 212-14 (1955, as amended). Those statutes are now Hawaii Revised Statutes § 602-5 and § 641-14 (1976, as amended), respectively.

[3] The court cites Hawaii Rules of Criminal Procedure, Rule 51, and Rules of the Supreme Court of Hawaii, Rule 3(b)(3), (4). Those are now Rule 52, Hawaii Rules of Penal Procedure and Rule 3(b)(3), Rules of the Supreme Court of Hawaii, respectively.

admissibility of the confession and the transcript, defense counsel consistently challenged the rendering of the *Miranda* warnings by police as being improper. He argued that when the defendant originally stated "no" when asked if he wanted to tell the detective about the burglaries, all questioning should have ceased. He argued, further, that there were gaps in the tape recording indicating that the recorder had been turned off during the interview and on again. Defendant's contention was that, while the recorder was off, the police overcame his will to remain silent.

During the pre-trial hearing, only one question was asked about the arrest.[4] Defendant was not at the pre-trial hearing and did not testify at trial. Only at argument after the pre-trial hearing did defense counsel raise the question of the illegal arrest. The court did not rule on that point.

Hawaii Rules of Penal Procedure (HRPP), Rule 47 (1977), states:

An application to the court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court permits it to be made orally. *It shall state the grounds upon which it made* and shall set forth the relief or order sought. It may be supported by affidavit. [Emphasis added.]

Rule 47, HRPP is substantially the same as Rule 7(b)(1) of the Hawaii Rules of Civil Procedure (1972, as amended) and we may look at the latter to determine the practice under Rule 47, HRPP (1977). *United States v. Okawa,* 26 F.R.D. 384, 385, n.1 (D.C. Haw. 1961). The requirement that motions be in writing is intended to provide notice to the adverse party of the grounds for the motion and its pendency. 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: *Civil* § 1191 (1969). Beyond that, it also enables the court to keep the evidence in focus as it may apply to those stated grounds.

We hold that the question of the legality of defendant's arrest was not properly brought before the trial court and, therefore, will not be considered and passed upon in this appeal. *State v. De Silva,* 64 Haw. 40, 636 P.2d 728 (1981); *State v. Martin,* 62 Haw. 364, 616 P.2d 193 (1980); *State v. Bunn,* 50 Haw. 351, 354, 440 P.2d 528, 532 (1968); *State v. Cummings,* 49 Haw. 522, 423 P.2d 438 (1967).

---

[4]  Q. What was the basis for Mr. Kalani's arrest? What were the charges?
    A. For the burglary that we were investigating.

B.

Defendant's second ground for challenging the admission of his confession into evidence is his contention that the *"Miranda* warnings"* were not properly given to him prior to his confessing, and that the police continued to interrogate him after he had answered "no" to the question, "This is just asking you if you would like to tell me what you know? Yes or no?"

After his arrest, defendant was taken to the police station and held in custody. Approximately six hours later, he was interrogated and gave a statement indicating that he and two other individuals had committed the burglaries under investigation. In that period of six hours, defendant's companion, who was arrested at the same time, was interviewed and gave a statement. The police denied that defendant was told about his companion's confession which implicated him in the burglaries.

The evidence showed that in advising defendant of his constitutional rights, the police used a departmental form entitled "Informing Persons Being Interrogated Of Their Constitutional Rights." This form contains a series of questions to which the defendant is asked to note his answers as being "yes" or "no" on the form. Both at the hearing and at the trial, a transcript of the interrogation was received in evidence. With regard to question No. 4 on the form, the transcript shows the following:

Q. Boobi, would you like to tell me or what you know about this burglary investigation we're conducting?

A. I don't know nothing.

Q. This is just asking you if you would like to tell me what you know? Yes or no?

A. No.

Q. Boobi, going back to no. 4 there, would you like to tell me what happened or what you know if anything about the cases, Alvin Tanigawa burglary where guns were stolen and G-5552, Wayne Yamamoto by Kapaa School, also burglary, where firearms, guns, were taken. That's two burglaries I want to talk to you about and my question to you is would you like to tell me what happened or what you know about these cases?

A. I don't know about the other guns.

Q. Answer my question, would you like to tell me what hap-

pened or what you know. As [sic] not saying that you know, okay? Boobi, you made a correction on no. 4 on the bottom section, [w]ould you like to tell me what happened or what you know. You crossed out no with your initials and marked yes, is that right?

A. Yes.

Q. Under that it says I am willing to answer questions and make a statement. If you are willing to make a statement and answer my questions would you sign under there?

A. Yes.

When defendant answered no, the officer turned off the tape recorder. He testified it was apparent to him defendant did not really understand the question and, therefore, he attempted to clarify it for him. The recorder was off for 20-25 minutes. When the tape recorder was turned on again, the defendant had changed his mind and was willing to tell the police what he knew about the burglaries. Defendant changed his answer from no to yes and initialed the change on the form. Defendant contends the police improperly used the form because the officer did not use the precise language of the form in the first question quoted above. He also contends that when defendant answered no, all interrogation should have stopped. Defendant contends that any statement made after that was in violation of *Miranda*.

We find nothing in the paraphrasing used by the police which either misled or was intended to mislead the defendant and was, in fact, clearer than the printed question. It informed him of the subject matter of the investigation and asked defendant if he wanted to tell the police what he knew. Based upon the defendant's responses to the first two questions above, the police felt defendant did not fully comprehend the questions. They then turned the tape recorder off and explained the matter to him. We note that even after the tape recorder was turned on again the defendant's answer to the next question was not responsive to the question and required the police officer to again explain.

Before a confession may be received in evidence, the prosecutor must show that the person interviewed was warned that he had the right to remain silent, that any statement he made could be used as evidence against him, and that he had the right to consult with a lawyer, either retained or appointed, and to have the lawyer with

him during the interrogation. *Miranda v. Arizona,* 384 U.S. 436 (1966); *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971); *State v. Green,* 51 Haw. 260, 457 P.2d 505 (1969). Further, the government must show that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Green, supra,* at 263.

*Miranda, supra,* clearly states that if the individual being interrogated indicates in any manner, at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease. He has shown he intends to exercise his Fifth Amendment privilege. In *Tague v. Louisiana,* 444 U.S. 469 (1980), the United States Supreme Court held that the government has a heavy burden in proving a defendant knowingly and intelligently waived his right to remain silent. We think the government has met its burden in this case.

In his decision the trial judge implicitly found that he believed the police officers when, under oath, they testified that when defendant answered no he was confused and was not really refusing to talk to them any further. Defendant was not at the preliminary hearing, did not testify at trial, and presented no contradictory evidence. The testimony of the officers was the only evidence before the court and was corroborated by defendant's answers to the questions immediately after the tape recorder was turned back on. In *Green, supra,* at 264, the court states that,

> The trial judge has a duty to determine the admissibility of an inculpatory statement out of the presence of the jury and prior to the jury's exposure to such evidence. *See Jackson v. Denno,* 378 U.S. 368 (1964); HRS § 621-26 (1976). In order to effectuate this duty, *the trial judge is vested with wide discretion to determine the credibility of the witnesses and to weigh the evidence in order to ascertain whether the prerequisites to admissibility are present. * * * [T]he reviewing court may not disturb the finding of admissibility unless the defendant demonstrates that there has been a clear abuse of discretion* on the part of the trial judge in the determination of admissibility. *Meller v. State,* 251 Md. 362, 247 A.2d 530, 540 (1968). [Emphasis added.]

*See also State v. Liuafi,* 1 Haw. App. 625, 623 P.2d 1271 (1981); *State v. Maluia,* 56 Haw. 428, 539 P.2d 1200 (1975).

Defendant can make no showing in this case of such abuse of

discretion.[5]

Where there is more than a scintilla of evidence to sustain the conclusion of the trial judge that the statement was voluntarily made, the confession may be accepted into evidence. *State v. Pahio,* 58 Haw. 323 at 330, 568 P.2d 1200 (1977).

We emphasize at this point that this ruling is and should be confined to the facts of this case. It does not relieve law enforcement officers from scrupulously respecting a defendant's exercise of his right to refuse to answer any questions they may put to him. Nor do we mean to indicate in any way that the government's burden in cases regarding admissibility of confessions is any less than stated in *Tague, supra.* Finally, we do not intend to minimize from the trial court's duty in such cases as outlined in *Green, supra.*

## II.

Defendant argues that his requested instruction should have been given to the jury. He argues that the confession, uncorroborated by any other independent evidence, cannot be used by the jury in its deliberations to supply a vital element of the offense charged. In *State v. Yoshida,* 44 Haw. 352, 354 P.2d 986 (1960), the rule was established in this jurisdiction that full proof of the corpus delicti is not required to be established independently of the confession before it may be resorted to, and a confession may be relied upon to meet and remedy a deficiency otherwise existing in the proof of the corpus delicti if the trustworthiness of the confession

---

[5] Although we are bound by the holding in *Green,* as followed in *Maluia* and *Liuafi,* we are constrained to point out that Justice Levinson's statement in *Green,* that the standard of review is "abuse of discretion," is really too broad, although it is possible to read *Green* to mean that the discretion of the trial judge is limited to the determination of credibility. We recently held in *State v. Tuua,* 3 Haw. App. ___, 649 P.2d 1188 (1982) that the standard of review involving the admission of out-of-court identification in criminal cases is the clearly erroneous rule, citing *State v. Patterson,* 58 Haw. 462, 571 P.2d 745 (1977). We think the same rule should apply to appellate review of the trial court's admission of confessions. *Cf. United States v. Benedict,* 647 F.2d 928 (9th Cir. 1980); *United States v. Dufur,* 648 F.2d 512 (9th Cir. 1980); *United States v. Gorel,* 622 F.2d 100 (5th Cir. 1980); *United States v. Schmidt,* 573 F.2d 1057 (9th Cir. 1978). Were we to apply the clearly erroneous rule in the case at bar, the result would be the same.

appears to be assured by circumstances shown by the independent evidence.[6]

In the case at bar, defendant's confession did not supply any missing element. The evidence shows that defendant had been in possession of the fruits of the crime shortly after its commission. He was familiar with the situs of both burglaries. The witness, Hayden, identified defendant at trial and testified that, when he bought the firearms from the defendant and his companion, he had at the same time refused to purchase two other guns. These guns were placed by the defendant and his companion into a '65-'67 Chevrolet, red. All of this evidence was more than sufficient to support the jury's verdict. Defendant's statement was only the "icing on the cake."

Defendant's requested instruction was properly refused.

### III.

The defendant contends that the transcript of his interrogation by the police should not have been received in evidence. He argues that the transcript was prejudicial because it was a transcript of a tape which did not record all of the discussion between the police and the defendant. He maintains that it was prejudicial to him because that portion of the discussion wherein the detective explained the meaning of the question whether or not the defendant wanted to tell him what he knew was not recorded. Defendant relies on Rule 403, Hawaii Rules of Evidence (HRE), Chapter 626, HRS (effective January 1, 1981), which reads as follows:

> *Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[7] [Footnote added.]

---

[6] The confession has already been found to have been properly admitted.

[7] We note that this action was brought before, but trial was begun after, the effective date of the HRE. HRS § 626-2 sets the effective date of the HRE at January 1, 1981. The rules are stated to be applicable to actions, cases and proceedings brought

In citing the rule, defendant apparently concedes that the transcript contained relevant evidence. We find its probative value was not substantially outweighed by the danger of any of the factors set forth in the rule. The substance and detail of the tape's contents, and, therefore, the transcript's, were already described to the jury by Detectives Ornellas and Fujinaki. Defendant's confession was already in evidence. His objection was really to the gaps on the tape and that the transcript did not contain the complete interview. This latter argument really goes to the weight of the evidence, not its admissibility.

As in *Hampton v. State of Alaska,* 569 P.2d 138 (Alaska 1977), the jury here already had before it the testimony of the police officers regarding the "gap". Defendant produced no contradictory evidence; the jury was instructed on the voluntariness of confessions; and the evidence as a whole was more than sufficient to convince the jury beyond a reasonable doubt that the defendant had committed the offenses charged. The admission of the evidence did not affect any substantial rights of the defendant or deprive him of a fair trial. Rule 103(a)(1), HRE.

Affirmed.

*Lawrence D. McCreery* on the briefs for defendant-appellant.

*Lorna A. Nishimitsu,* Deputy Prosecuting Attorney, County of Kauai, on the briefs for plaintiff-appellee.

---

on or after that date. The statute also provides that the rules may apply to further procedure in actions, cases and proceedings pending on that date except where the application of the rules would not be feasible or would work injustice. The prosecutor does not argue the applicability of the rules and the record does not indicate any infeasibility or injustice.