STATE OF NORTH CAROLINA v. DWIGHT PARKER, SR.

No. 632A83

(Filed 10 December 1985)

**1. Searches and Seizures § 7— knife seized from jacket hanging on chair three feet from defendant—valid search incident to arrest**

In a prosecution for two counts of first degree murder and two counts of armed robbery, a knife found in a jacket when defendant was arrested was properly admitted as having been obtained by a valid search incident to arrest

State v. Parker

where defendant attempted to reach under a sofa cushion when officers entered the small basement room where he was reclining on the sofa, a struggle ensued between defendant and some of the officers as they subdued and handcuffed him, the officer who searched the jacket stated that he grabbed it because defendant made a motion for the jacket, defendant was three or four feet from the jacket, and officers had information that defendant was wearing a gray suede jacket.

2. **Homicide § 21.6— felony murder—independent evidence of corpus delicti—satisfied if fact of death independently shown**

State v. Franklin, 308 N.C. 682, did not abandon the rule that there must be some evidence of the corpus delicti in addition to defendant's confession, but simply held that this rule is fulfilled in a felony murder prosecution when the fact of death is independently shown.

3. **Criminal Law § 106.4— confession—non-capital cases—independent proof of corpus delicti no longer necessary—corroboration of confession sufficient**

It is no longer necessary in non-capital cases that there be independent proof tending to establish the corpus delicti of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime, but there must be strong corroboration of essential facts and circumstances embraced in the defendant's confession.

4. **Criminal Law § 106.4— robbery—proof of corpus delicti only by confession—corroborative evidence sufficient**

Where defendant confessed to an armed robbery and there was no evidence of the corpus delicti independent of defendant's confession, there was sufficient substantial independent evidence which would tend to establish that defendant was telling the truth when he confessed where the State's evidence paralleled defendant's confession as to two murders and one other armed robbery; defendant stated in his confession that he shot one victim three times and shot and stabbed the other, that he had tied a cinder block to one victim's leg with a green clothesline and a concrete block to the other's ankle with a lightweight chain, and that he had disposed of the bodies in the river; the victims' bodies were recovered from the Tar River; both victims died as a result of gunshot wounds to the head and one had also been stabbed; police seized a knife from defendant's jacket pocket when he was arrested and defendant admitted it was the knife he used to stab the victims; the bodies were in the condition described by defendant when they were recovered by the police; one victim's stolen Cadillac was recovered when the defendant was arrested; there were bloodstains on newspapers in the automobile, on a blanket draped over the front seat, on the seats, and on the passenger door; blood in the car was consistent with the victims' blood types; defendant had confessed to burning his shoes and clothes, one victim's bedroom slippers, and two bloody sheets and towels in a trash barrel in his girlfriend's yard; police recovered from a trash barrel behind the girlfriend's residence the partially burned remains of a pair of bedroom slippers, a towel, and a number of other pieces of cloth; and one victim's wallet was recovered at the back of a neighbor's trailer.

THE defendant was convicted at the 6 September 1983 Criminal Session of PITT County Superior Court of two counts of first degree murder and two counts of armed robbery. Following a sentencing hearing, the defendant was sentenced to life imprisonment on each of the murder convictions and to fourteen years on each of the armed robbery convictions, all sentences to be served consecutively. The defendant appealed the life sentences to this Court as a matter of right pursuant to N.C.G.S. § 7A-27(a), and we granted the defendant's motion to bypass the Court of Appeals on the charges of armed robbery on 1 March 1985.

The State's evidence tended to show that on 23 February 1983 the body of Ray Anthony Herring was recovered from the Tar River near the bridge on Highway 222 near Falkland, Pitt County, North Carolina. A cinder block was tied to Herring's right ankle with a piece of green clothesline. On 24 February 1983 the body of Leslie Levon Thorbs was removed from the Tar River directly below the same bridge. A concrete block was tied to the right ankle with a piece of lightweight chain. Both had died as the result of gunshot wounds to the head fired from close range. Herring had been stabbed.

Herring had last been seen alive when he left his home in his automobile at around 10:45 p.m. on Friday, 18 February 1983. Thorbs was last seen alive when Walter Kizzie, a young man in Thorbs' foster care, left him at home alone at about 10:00 p.m. on the same night. At that time, Thorbs' black Cadillac automobile with a brown top was parked in Thorbs' driveway. When Kizzie and James Porter returned to Thorbs' home about 12:30 a.m. on 19 February 1983, no one was at home, the lights and television were on, Herring's car was parked across the street, and the Cadillac was gone.

Because of evidence linking the defendant to the murders, a warrant was issued for his arrest, and on 26 February 1983 Pitt County Sheriff's investigators went to Newark, New Jersey where they had reason to believe the defendant was staying. Officers from the Essex County, New Jersey Sheriff's Department, accompanied by the North Carolina officers, arrested the defendant in the basement of a residence at 328 Slide Street. A set of keys for Thorbs' Cadillac was recovered from the defendant's left

front pants pocket, and an eight-inch butcher knife was taken from the pocket of a gray suede jacket which was draped over a chair in the room where he was arrested. The defendant was taken to the Essex County Sheriff's Department where he was interrogated. He gave a detailed written confession in which he said that he had planned to kill Thorbs for his money and car. He said that when "the other man" arrived at Thorbs' house, he decided that he would have to kill him, too, and that he took $25.00 and a diamond ring from Thorbs and $10.00 from the other man.

Additional evidence necessary to an understanding of the issues raised on this appeal will be included in the opinion.

The defendant did not offer evidence in the guilt-determination phase of his trial.

*Lacy H. Thornburg, Attorney General, by David Roy Black-well, Assistant Attorney General, for the State.*

*Ann B. Petersen for the defendant-appellant.*

BILLINGS, Justice.

The defendant brings forward three assignments of error:

(1) The knife recovered from the pocket of the defendant's jacket was unlawfully seized in the course of an unlawful search conducted without a warrant;

(2) The evidence was not sufficient to permit a conviction for armed robbery of Ray Herring;

(3) The imposition of a sentence based upon a verdict of guilt [sic] returned by a jury drawn from a venire from which potential jurors were excluded because of their scruples against capital punishment deprives the defendant of his right to due process of law and his right to trial by jury.

[1] At the defendant's trial, the State offered into evidence the fixed-blade knife that was taken from the defendant's jacket pocket at the time of his arrest. The defendant objected on the basis that the knife, allegedly the one used to stab the victim Herring, was obtained in the course of a warrantless search that extended beyond the bounds justified by a search pursuant to an

arrest and therefore violated his rights under the Fourth Amendment to the United States Constitution.

After a *voir dire* hearing, the trial judge determined that the arrest was lawful. The defendant does not raise on appeal any claim that the arrest was unlawful.

Evidence offered at the *voir dire* hearing on the motion to suppress the knife supported the trial judge's findings that at the time of defendant's arrest, the defendant was handcuffed and frisked, that the gray suede jacket from which the knife was taken was within three or four feet of the place where the defendant was reclining on the sofa, that when the defendant was confronted by the officers he made a movement toward the jacket, and that the officers had information that the defendant was wearing a gray suede jacket. The trial judge upheld the seizure of the knife as having been obtained by a valid search incident to the arrest of the defendant.

Recognizing that under the rule laid down by the United States Supreme Court in *Chimel v. California*, 395 U.S. 752 (1969) the parameters of a search incident to arrest depend upon the facts of each case, the defendant contends that although the jacket was within three or four feet of him when he was arrested, it was not within the permissible scope of the search incident to the arrest because when it was searched he was in handcuffs and in the control of a number of officers in a confined space.

We reject the defendant's contention. The uncontradicted evidence on *voir dire* was that when the officers entered the small basement room where the defendant was reclining on the sofa, he first attempted to reach under the sofa cushion and then started to get up. A struggle ensued between the defendant and some of the officers as they subdued and handcuffed him. The officer who searched the jacket stated that he grabbed it because the defendant, who was three or four feet from the jacket, made a motion toward it. Additionally, when the defendant was taken to the sheriff's department he was allowed to wear the jacket.

In the case of *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied*, 446 U.S. 941 (1980), this Court upheld as incident to an arrest the search and seizure of a gun hidden under the rug in the corner of the nine by twelve foot motel room oc-

cupied by the defendant, even though the defendant was hand-cuffed and under the control of police officers. In upholding the search, the Court quoted with approval the following statement from *State v. Austin*, 584 P. 2d 853, 855 (1978):

> Appellant does not challenge the legality of his arrest but maintains that because he was handcuffed, he had no "control" over the area; therefore, the search cannot be justified under the *Chimel* standard. . . .
>
> .  .  .
>
> It thus appears that the defendant in custody need not be physically able to move about in order to justify a search within a limited area once an arrest has been made.

We hold that the findings of the trial judge, amply supported by the evidence, support the conclusion that the knife was lawfully seized incident to the arrest of the defendant.

[2] By his second assignment of error, the defendant contends that his conviction for the armed robbery of Ray Herring must be vacated because apart from his extrajudicial confession that "he [the defendant] took $10.00 off the guy," there was no evidence of the *corpus delicti* of that armed robbery. In support of his contention, the defendant cites a long line of North Carolina cases standing for the proposition that there must be direct or circumstantial proof of the *corpus delicti* independent of the defendant's confession in order to sustain a conviction. *See, e.g., State v. Brown*, 308 N.C. 181, 301 S.E. 2d 89 (1983); *State v. Green*, 295 N.C. 244, 244 S.E. 2d 369 (1978); *State v. Bass*, 253 N.C. 318, 116 S.E. 2d 772 (1960).

The State concedes that aside from the defendant's confession there was no evidence presented at trial tending to prove the *corpus delicti* of the Herring armed robbery. There is nothing in the record to show that Herring had any money with him when he left home at 10:45 p.m. on 18 February, the night he was murdered, and nothing which would tend to prove that any property was missing from his person when his body was found in the Tar River. In short, the *corpus delicti* of this robbery, missing property, was shown *only* by the defendant's extrajudicial statement given to police officers following his arrest on 26 February 1983.

While conceding the absence of independent evidence tending to prove the *corpus delicti*, the State takes the position that under this Court's recent decision in *State v. Franklin*, 308 N.C. 682, 304 S.E. 2d 579 (1983), proof of the *corpus delicti aliunde* the defendant's confession is no longer necessary so long as there are sufficient facts and circumstances which corroborate the defendant's confession and generate a belief in its trustworthiness.

We do not agree that *Franklin* determines the question presented in this case. In *Franklin*, the defendant was convicted of felony murder and contended on appeal that his conviction could not stand as there was no evidence of the *corpus delicti* of first degree sexual offense, the predicate felony for the murder conviction. We characterized the issue as "one of first impression in our State." *Id.* at 692, 304 S.E. 2d at 585. Following an analysis of the underlying purposes and policies of the *corpus delicti* rule, the Court in *Franklin* concluded that "[w]here there is proof of facts and circumstances which add credibility to the confession and generate a belief in its trustworthiness, *and where there is independent proof of death, injury, or damage, as the case may require*, by criminal means, these concerns vanish and the rule has served its purpose." *Id.* at 693, 304 S.E. 2d at 586 (emphasis added). This narrow ruling does not control the instant case, however, as both sides admit there was not presented "independent evidence of the fact of injury," i.e., missing property. Further, the *Franklin* opinion makes clear that the *corpus delicti* of felony murder "is established by evidence of the death of a human being by criminal means . . . ." *Id.* at 692, 304 S.E. 2d at 585-86. We therefore did not abandon the rule that there must be some evidence of the *corpus delicti* in addition to the defendant's confession, we simply held that this rule is *fulfilled* in a felony murder prosecution when the fact of *death* is independently shown. The *element* which consists of the underlying felony may be proved by the defendant's confession when there is corroborative evidence tending to establish the reliability of the confession.

[3] Having determined that *Franklin* is not dispositive, we elect to make further inquiry as to whether our current approach to the *corpus delicti* rule is a sound one in consideration of the result which its application would produce under the facts presented in the instant case and in light of what we perceive to

be a judicial trend toward abandoning a strict application of the corroboration requirement.

Our research reveals that the rule is quite universal that an extrajudicial confession, standing alone, is not sufficient to sustain a conviction of a crime.[1] As to the extent and quality of corroborative evidence required, however, courts are in sharp disagreement. The legal commentators identify three basic formulations of the *corpus delicti* rule. *See Opper v. United States*, 348 U.S. 84 (1954); McCormick, *Evidence* § 145 (3rd ed. 1984); Note, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule*, 46 Fordham L. Rev. 1205 (1978); *Developments in the Law—Confessions*, 79 Harv. L. Rev. 935 (1966); Annot., 45 A.L.R. 2d 1316 (1956). These different approaches reflect the fact that there is marked divergence of opinion as to the quantum and type of corroboration necessary to ensure that a person is not convicted "of a crime that was never committed or was committed by someone else." *State v. Franklin*, 308 N.C. at 693, 304 S.E. 2d at 586.

The majority of American jurisdictions follow a formulation of the *corpus delicti* rule which requires that there be corroborative evidence, independent of the defendant's confession, which tends to prove the commission of the crime charged. *E.g., People v. Cobb*, 45 Cal. 2d 158, 287 P. 2d 752 (1955); *People v. Willingham*, 89 Ill. 2d 352, 432 N.E. 2d 861 (1982). *See also* Annot., 45 A.L.R. 2d 1316, § 7 and cases cited therein. Under this approach, the independent evidence is sufficient only if it "touches or concerns the *corpus delicti*." *Lemons v. State*, 49 Md. App. 467, 472, 433 A. 2d 1179, 1182 (1981). North Carolina has always applied this version of the *corpus delicti* rule, *see State v. Bass*, 253 N.C. 318, 116 S.E. 2d 772 (1960), and this approach was recently reaffirmed in *State v. Franklin*, 308 N.C. 682, 693, 304 S.E. 2d 579, 586 (requiring "independent proof of death, injury, or damage").

The second identifiable approach to this question is actually an extension of the above-stated rule. While the majority position

---

1. Massachusetts is the only jurisdiction that permits a conviction to rest upon the uncorroborated confession of the accused. *See Commonwealth v. Kimball*, 321 Mass. 290, 73 N.E. 2d 468 (1947).

requires that there be *some*[2] independent proof touching upon the *corpus delicti*, a few cases have held that the corroboration must consist of substantial evidence, independent of the accused's confession, which tends to establish each and every element of the crime. *E.g., Pines v. United States*, 123 F. 2d 825 (8th Cir. 1941); *Forte v. United States*, 94 F. 2d 236 (D.C. Cir. 1937). This is the version of the *corpus delicti* rule specifically rejected by this Court in *Franklin*.

The third approach to the *corpus delicti* issue has been denominated the "trustworthiness" version of corroboration and is generally followed by the federal courts and an increasing number of states. Under this rule, "[t]here is no necessity that [the] proof [independent of the defendant's confession] touch the *corpus delicti* at all. . . . [P]roof of any corroborating circumstances is adequate which goes to fortify the truth of the confession or tends to prove facts embraced in the confession." *Opper v. United States*, 348 U.S. 84, 92 (1954). *See also United States v. Abigando*, 439 F. 2d 827 (5th Cir. 1971); *United States v. Johnson*, 589 F. 2d 716 (D.C. Cir. 1978); *Moll v. United States*, 413 F. 2d 1233 (5th Cir. 1969); *Schultz v. State*, 82 Wis. 2d 737, 264 N.W. 2d 245 (1978); *State v. George*, 109 N.H. 531, 257 A. 2d 19 (1969); *State v. Kalani*, 3 Haw. App. 334, 649 P. 2d 1188 (1982). In *United States v. Johnson*, 589 F. 2d 716 (D.C. Cir. 1978), the court noted that while "[u]nder the conventional formulation of the corroboration requirement . . . the prosecution must introduce independent proof of the *corpus delicti* of the crime," under the trustworthiness version "the adequacy of corroborating proof is measured not by its tendency to establish the *corpus delicti* but by the extent to which it supports the trustworthiness of the admissions." 589 F. 2d at 718-19. While this third approach to the *corpus delicti* rule is stated in both commentary and cases, occasions for its full application have been rare.

---

2. Jurisdictions differ as to the quantum of independent evidence touching upon the *corpus delicti* and corroborative of the accused's extrajudicial statements which is necessary to sustain a conviction. *See, e.g., People v. Towler*, 31 Cal. 3d 105, 115, 641 P. 2d 1253, 1257 (1982) ("slight or prima facie proof is sufficient"); *State v. Allen*, 335 So. 2d 823, 825 (Fla. 1976) ("substantial evidence tending to show commission of the charged crime"); *State v. Ferry*, 2 Utah 2d 371, 372, 275 P. 2d 173, 173 (1954) (requiring "clear and convincing" independent evidence of *corpus delicti*); *Simmons v. State*, 234 Ind. 489, 493, 129 N.E. 2d 121, 122 (1955) (*corpus delicti* must be established by "clear proof" independent of confession).

Although grouping the methods of assessing the quantum and quality of corroborative evidence necessary to prove the *corpus delicti* into these three categories is appropriate, we hasten to recognize that it is at the same time an oversimplification. As the United States Supreme Court recognized in *Opper v. United States*, 348 U.S. 84, 93 (1954): "Whether the differences in quantum and type of independent proof are in principle or of expression is difficult to determine. Each case has its own facts admitted and its own corroborative evidence, which leads to patent individualization of the opinions." It is therefore very difficult to synthesize and harmonize the numerous decisions on this issue, and much confusion has been caused by failure to distinguish among the different formulations of the *corpus delicti* requirement.

In our view, however, the primary confusion in this area has been engendered by the courts' use of varying and inconsistent interpretations of what is meant by the term "*corpus delicti*." In his treatise on evidence, Wigmore notes that "[t]he meaning of the phrase *corpus delicti* has been the subject of much loose judicial comment, and an apparent sanction has often been given to an unjustifiably broad meaning." 7 Wigmore on Evidence § 2072 at 524 (Chadbourn rev. 1978).

Literally, the phrase "*corpus delicti*" means the "body of the crime." McCormick, *Evidence* § 145 at 366 (3rd ed. 1984). To establish guilt in a criminal case, the prosecution must show that (a) the injury or harm constituting the crime occurred; (b) this injury or harm was caused by someone's criminal activity; and (c) the defendant was the perpetrator of the crime.[3] It is generally accepted that the *corpus delicti* consists only of the first two elements,[4] and this is the North Carolina rule. *See State v. Franklin*, 308 N.C. 682, 691, 304 S.E. 2d 579, 585 (1983).

---

3. It should be noted that in this case there is overwhelming evidence *aliunde* the confession to tie the defendant to any crimes shown to have been committed against Herring at the time in question.

4. In Wigmore's view, the *corpus delicti* in its most orthodox sense signifies only the first element, i.e., the fact of the specific loss or injury sustained. He offers that

> [t]his, too, is a priori the more natural meaning; for the contrast between the first and the other elements is what is emphasized by the rule; i.e., it warns us

Curiously, however, many courts have defined the *corpus delicti* as proof of each *element* of the crime charged. Plainly, independent evidence of the *corpus delicti*, defined as it is in this jurisdiction to include proof of injury or loss and proof of criminal agency, does not equate with independent evidence as to each essential element of the offense charged. Applying the more traditional definition of *corpus delicti*, the requirement for corroborative evidence would be met if that evidence tended to establish the essential harm, and it would not be fatal to the State's case if some elements of the crime were proved solely by the defendant's confession. It is therefore axiomatic that the results obtained through application of a rule requiring independent proof of the *corpus delicti* will not be consistent or comparable so long as *corpus delicti* is variously defined.

There is another problem which may account, in part, for the complexities of application of the *corpus delicti* rule. While defining the *corpus delicti* "may have been a relatively simple task when crimes were few and concisely defined, . . . modern statutes tend to define offenses more precisely and in greater detail than traditional case law. Defining the *corpus delicti* has thus become more complex." McCormick, *Evidence* § 145 at 371.

Finally, we note that a strict application of the *corpus delicti* rule is nearly impossible in those instances where the defendant has been charged with a crime that does not involve a tangible *corpus delicti* such as is present in homicide (the dead body), arson (the burned building) and robbery (missing property). Examples of crimes which involve no tangible injury that can be isolated as a *corpus delicti* include certain "attempt" crimes, conspiracy and income tax evasion. *See Smith v. United States*, 348 U.S. 147 (1954). The difficulty of applying the traditional *corpus delicti* rule of corroboration to these offenses may, in part, account for the shift in emphasis to a rule requiring corroboration of each essential element of the crime charged. Perceiving this

---

to be cautious in convicting, since it may subsequently appear that no one has sustained any loss at all; for example, a man has disappeared, but perhaps he may later reappear alive. To find that he is in truth dead, yet not by criminal violence — i.e., to find the second element lacking, is not the discovery against which the rule is designed to warn and protect. . . .

7 Wigmore on Evidence § 2072 at 525.

trend toward a broad interpretation of the *corpus delicti*, one author notes that:

> [T]he corpus delicti rule . . . is periodically misapplied, and its emphasis on the elements of the crime charged as opposed to the reliability of the confession has caused several courts and commentators to question the extent to which the corpus delicti version serves its original purposes, and to prefer the alternative trustworthiness version.

Note, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule*, 46 Fordham L. Rev. 1205, 1216 (1978).

The quoted author's comments are generally reflective of the views expressed by a number of courts and commentators that the *corpus delicti* version of the corroboration requirement may have "outlived its usefulness." McCormick, *Evidence* § 145 at 370.

The foundation for the *corpus delicti* rule lies historically in the convergence of three policy factors:

> first, the shock which resulted from those rare but widely reported cases in which the "victim" returned alive after his supposed murderer had been convicted . . . ; and secondly, the general distrust of extrajudicial confessions stemming from the possibilities that a confession may have been erroneously reported or construed . . . , involuntarily made . . . , mistaken as to law or fact, or falsely volunteered by an insane or mentally disturbed individual . . . and, thirdly, the realization that sound law enforcement requires police investigations which extend beyond the words of the accused.

46 Fordham L. Rev. at 1205.

As we have noted previously in this opinion, an increasing number of courts have become satisfied that the possibility of convicting a person for a crime which was not in fact committed may be adequately guarded against by requiring only that the prosecution produce evidence which corroborates "the essential facts admitted [in the defendant's confession] sufficiently to justify a jury inference of their truth." *United States v. Johnson*, 589 F. 2d 716, 718 (D.C. Cir. 1978), *quoting Opper v. United States*, 348 U.S. 84, 93 (1954). It has even been suggested by some that the trustworthiness version of the corroboration require-

ment, with its focus on whether the defendant was telling the truth when he confessed, provides greater assurance against the use of an unreliable confession to prove the defendant's guilt than does the *corpus delicti* version. This is so because the latter approach is directed only to preventing convictions for a crime which has not occurred. It does nothing, however, to ensure that the confessor is the guilty party. As the New Jersey Supreme Court noted in *State v. Lucas*, 30 N.J. 37, 57, 152 A. 2d 50, 60 (1959), "There seems to be little difference in kind between convicting the innocent where no crime has been committed and convicting the innocent where a crime has been committed, but not by the accused."

The second historical justification for the *corpus delicti* rule relates to the concern that the defendant's confession might have been coerced or induced by abusive police tactics. To a large extent, these concerns have been undercut by the principles enunciated in *Miranda v. Arizona*, 384 U.S. 436 (1966) and the development of similar doctrines relating to the voluntariness of confessions which limit the opportunity for overzealous law enforcement. These developments make it "difficult to conceive what additional function the *corpus delicti* rule still serves in this context." Comment, *California's Corpus Delicti Rule: The Case for Review and Clarification*, 20 U.C.L.A. L. Rev. 1055, 1089 (1973). *See also* Note, *Developments in the Law—Confessions*, 79 Harv. L. Rev. 935, 1084 (1966) ("serious consideration should be given to elimination of the *corpus delicti* requirement"); Note, 46 Fordham L. Rev. 1205, 1235 (1978) (rule is duplicative of other confession doctrines).

Finally, it has been said that the *corpus delicti* rule encourages efficient law enforcement and thorough police investigations because the prosecution may not rely solely on the words of the defendant to obtain a conviction. In our review of this question, however, we have rarely seen this argument offered as a justification for the *corpus delicti* rule. It is "hardly a persuasive argument in favor of the *corpus delicti* rule inasmuch as the rule applies *only* to extrajudicial statements. . . . Carried to its logical extreme, the notion of law enforcement shouldering the entire burden of establishing the elements of a crime would lead to the prohibition of *all* confessions." Comment, 20 U.C.L.A. L. Rev. 1055, 1089 (1973) (emphasis in original).

We are persuaded by these criticisms directed to the *corpus delicti* version of corroboration and have concluded that we need not adhere to our strict rule requiring independent proof of the *corpus delicti* in order to guard against the possibility that a defendant will be convicted of a crime that has not been committed. We agree with the Supreme Court of Hawaii that:

> Whatever the difference in the quantum and the quality of proof required under the particular rules adopted in the various jurisdictions, the basic purpose of each in requiring corroboration of the confession by independent evidence before it may be admitted or used is to meet the possibility that the confession may have been falsely given through misunderstanding, confusion, psychopathic aberration or other mistake. [Citations omitted.] We are disposed to believe that the protection of the accused can be as well assured by the proper application of the flexible rule [that permits a confession to be relied on to prove the *corpus delicti* if the trustworthiness of the confession is established by corroborative evidence], as by the rigid rule which requires independent proof of all elements of the *corpus delicti* before the confession may be resorted to. With the additional safeguard requiring the voluntariness of a confession to be shown, preliminarily to the satisfaction of the court and ultimately to the satisfaction of the jury, before it may be considered, and the protection afforded by the fundamental requirement that the guilt of the accused be proven beyond all reasonable doubt, it appears to us that the possibility of misuse of a defendant's confession under the rule we favor is too remote to justify the additional restrictions of a more rigid rule.

*State v. Yoshida*, 44 Haw. 352, 357-58, 354 P. 2d 986, 990 (1960).

The federal courts are nearly unanimous in approving the trustworthiness version of corroboration. *See, e.g., United States v. Johnson*, 589 F. 2d 716, 718 (D.C. Cir. 1978) ("adequacy of corroborating proof measured not by its tendency to establish the *corpus delicti* but by the extent to which it supports the trustworthiness" of confession); *United States v. Wilson*, 436 F. 2d 122, 124 (3rd Cir.), *cert. denied*, 402 U.S. 912 (1971) (government must "introduce substantial evidence which would tend to establish the trustworthiness of the statement"); *United States v. Abigando*,

439 F. 2d 827, 833 (5th Cir. 1971) ("a confession can be corroborated by bolstering parts of it to show trustworthiness"); *Landsdown v. United States*, 348 F. 2d 405, 409 (5th Cir. 1965) (preferring "less stringent and more reasonable requirement of corroboration of the statement itself"). Also, the corroboration rule focusing on the sufficiency of independent evidence tending to demonstrate the trustworthiness of the defendant's confession has found favor with a number of state courts. *E.g., State v. Kalani*, 3 Haw. App. 334, 649 P. 2d 1188 (1982); *People v. Brechon*, 72 Ill. App. 3d 178, 390 N.E. 2d 626 (1979); *State v. George*, 109 N.H. 531, 257 A. 2d 19 (1969). *Cf. Schultz v. State*, 82 Wis. 2d 737, 753, 264 N.W. 2d 245, 253 (1978) ("If there is corroboration of any significant fact, that is sufficient under the Wisconsin test.").

We adopt a rule in non-capital cases that when the State relies upon the defendant's confession to obtain a conviction, it is no longer necessary that there be independent proof tending to establish the *corpus delicti* of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime.

We wish to emphasize, however, that when independent proof of loss or injury is lacking, there must be *strong* corroboration of *essential* facts and circumstances embraced in the defendant's confession. Corroboration of insignificant facts or those unrelated to the commission of the crime will not suffice. We emphasize this point because although we have relaxed our corroboration rule somewhat, we remain advertent to the reason for its existence, that is, to protect against convictions for crimes that have not in fact occurred.

[4] We turn now to the particular facts presented in the instant case to determine whether there is substantial independent evidence which would tend to establish that when the defendant confessed to the armed robbery of Ray Anthony Herring he was telling the truth.

An examination of the record reveals that the State's evidence parallels the defendant's confession as to the armed robbery and murder of Leslie Levon Thorbs and as to the murder of Ray Herring. The *corpus delicti* of the murders was proven by evidence independent of the defendant's confession.

In his confession, the defendant stated that he shot Thorbs three times and that he both shot and stabbed Herring. The victims' bodies were recovered from the Tar River. Both Thorbs and Herring died as the result of gunshot wounds to the head. Herring had also been stabbed. When the defendant was arrested in Newark, New Jersey, the police seized a knife from his jacket pocket, and defendant admitted it was the knife he used to stab Herring. The defendant also confessed that before he and Terry Best disposed of the bodies in the river, he tied a cinder block to Herring's leg with a green clothesline and a concrete block to Thorbs' ankle with a lightweight chain. When the bodies were located by police, they were in the condition described by the defendant. Also, when the defendant was arrested in New Jersey, Thorbs' stolen Cadillac was recovered, and an examination by Pitt County authorities revealed that there were bloodstains on newspapers in the automobile, on a blanket draped over the front seat, on the seats and on the passenger door. Blood on the door was consistent with Thorbs' blood type and that on the rear floorboard and front passenger seat was consistent with Herring's.

Other evidence corroborated the defendant's statement as to the manner in which he disposed of the victim's clothing and his own bloody attire. The defendant confessed to burning his shoes and clothes, Thorbs' bedroom slippers, and two bloody sheets and towels in a trash barrel in his girlfriend's yard. The police recovered in a trash barrel behind the girlfriend's residence the partially burned remains of a pair of bedroom slippers, a towel and a number of other pieces of cloth.

There was also plenary evidence presented by the State in addition to the defendant's extrajudicial confession tending to prove the *corpus delicti* of the armed robbery of Leslie Levon Thorbs. Thorbs' wallet was recovered by Robert Weaver, a neighbor of the defendant's girlfriend, at the back of his trailer beneath a window air conditioning unit. Thorbs' credit cards and some checks payable to him were inside the wallet.

Although there is no independent evidence tending to prove the *corpus delicti* of the Herring armed robbery, we are convinced that the trustworthiness of the defendant's confession that he robbed Herring of $10.00 has been amply established by the overwhelming amount and convincing nature of the corroborative

evidence just recited of more serious crimes committed against the victim and Thorbs at the time of the robbery. The evidence presented by the prosecution at trial mirrored almost precisely the defendant's version of how he committed the other crimes charged.

We note that in most of the cases we have reviewed the defendant was charged with only one offense, and the question for the court was whether there were sufficient facts and circumstances corroborative of the defendant's confession *to that single crime* to warrant a belief in the trustworthiness of his admissions. Only in *State v. Hunt*, 570 S.W. 2d 777 (Mo. 1978), conviction vacated on other grounds, 441 U.S. 901 (1979), have we found a case in which a court was presented with a factual situation similar to that presented in the instant case where the defendant was accused of more than one crime, the *corpus delicti* plainly was established as to one, and the issue was whether the defendant's confession to the other crime was sufficiently corroborated by independent evidence so as to engender a belief in its truth. In rejecting the defendant's argument that there was insufficient evidence of the *corpus delicti* of sodomy against the victim of a kidnapping to sustain a conviction for the sodomy offense, the Missouri court ruled:

> It is sufficient, in addition to the extrajudicial confessions, which in this instance in express terms admit all the indictment charges, that there be such extrinsic corroborative circumstances, as will, taken in connection with the confession, produce conviction of the defendant's guilt in the minds of the jury.

*Id.* at 781.

We therefore hold that under the particular facts presented in this case, where the defendant was charged with multiple crimes; the *corpus delicti* as to the more serious offenses was established independently of the defendant's confession; an element of the crime, use of a deadly weapon, was also established by independent evidence; and the State's evidence closely paralleled the defendant's statements as to the manner in which he committed the offenses, there was sufficient corroborative evidence to bolster the truthfulness of the defendant's confession and to sustain a conviction as to the Herring armed robbery even

though there was no independent evidence tending to prove the *corpus delicti* of that crime.

By this ruling, we expressly overrule language in *State v. Franklin*, 308 N.C. 682, 304 S.E. 2d 579 (1983), *State v. Brown*, 308 N.C. 181, 301 S.E. 2d 89 (1983) and other prior cases on the *corpus delicti* issue cited in those opinions which is inconsistent with our holding in the instant case.

Finally, on the issue of the death qualified jury, the defendant concedes that this Court has decided the issue against him in *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980) and in *State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983). The defendant asks that we reconsider our holding. This we decline to do.

The defendant was convicted by a jury after a fair trial, free of prejudicial error.

No error.