STATE OF NORTH CAROLINA
v.
TAREK LAMAR PARRISH
No. COA09-50
Court of Appeals of North Carolina
Filed August 4, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General M. Lynne Weaver, for the State.
Andrew B. Banzhoff for defendant-appellant.
HUNTER, Robert C., Judge.
Tarek Lamar Parrish ("defendant") appeals from jury verdicts finding him guilty of (1) trafficking in cocaine by possessing more than twenty-eight grams, but less than 200 grams; (2) possession with the intent to sell or deliver cocaine; and (3) possession with the intent to sell or deliver marijuana. Defendant argues on appeal that the trial court erred in failing to grant his motion to dismiss and his subsequent motion for a mistrial. After careful review, we find no error.

Background
The facts tended to show that on 7 October 2007, police officers found Eric Mauk ("Mauk") seated in a parked vehicle with defendant and another man. At that time, there were outstanding arrest warrants for Mauk with regard to various cocaine-related crimes, and he was considered armed and dangerous. Upon seeing the officers approach the vehicle, Mauk exited the vehicle and fled on foot. Defendant and the other occupant of the vehicle were taken into custody because of a heavy odor of marijuana emanating from the vehicle. Upon searching defendant incident to an arrest, three cellular phones were confiscated.
The officers, still in pursuit of Mauk, believed that he had entered the apartment of Yvonne Fountain ("Fountain"), defendant's mother. Defendant did not reside in Fountain's apartment, but a key to the apartment was found in the vehicle in close proximity to where defendant had been seated. The officers then obtained consent from Fountain to search the apartment for Mauk. Upon entering a bedroom, one of the officers found a clear, plastic bag of cocaine on the floor next to a bed. In this same room, the closet appeared disheveled, and a chair near the closet had footprints on the seat. The officers concluded that someone had tried to reach the attic access at the top of the closet.
After obtaining a search warrant, the officers carefully inspected the attic, fearing that Mauk may be hiding there armed. In the attic, the officers found another clear, plastic bag of cocaine. Commencing a search of the room for additional contraband, the officers found a set of electronic scales under a mattress and a bag of marijuana in a child's backpack.
At some point during the search, the officers brought defendant to the apartment, where he was detained along with his sister, mother, and grandfather. Officer Biddix testified at trial that defendant admitted at the scene that the cocaine belonged to him.
Defendant was interviewed by two police officers, prior to which defendant was read his Miranda rights and signed a waiver. Defendant told the police officers that "his mother could not go down for this, that the drugs were his." He asked what had been found in the search, but was denied any details. Defendant told the police that "the clear, plastic bag with narcotics in the bedroom was his" and that "he had hidden it in there in the middle part of the day." He also said that he sold cocaine in order to pay his bills. Defendant did not write a statement, but stated that "[h]e just wanted to go to jail."
The officers also interviewed Fountain. After being read her rights and signing a waiver, Fountain stated to police that "she suspected [the drugs] may belong to her son, Terek Parrish." Fountain's statement was put into writing. At trial, both defendant and Fountain denied making these statements. Defendant testified that the police arrived with black masks and intimidated him. Defendant testified that the officers were trying to coerce a confession from him, but that he did not confess, and only told them that he was confused. Defendant claimed he was concerned about his mother potentially being taken to jail.
Defendant was indicted on charges of (1) trafficking in cocaine by possessing more than twenty-eight grams, but less than 200 grams; (2) possession with the intent to sell or deliver cocaine; and (3) possession with the intent to sell or deliver marijuana. Defendant was found guilty of all charges by a jury and judgments were entered 20 March 2008. Defendant was sentenced to (1) 35 to 42 months imprisonment for the trafficking in cocaine conviction; (2) 8 to 10 months imprisonment for the possession with the intent to sell or deliver cocaine conviction; and (3) a suspended sentence of 6 to 8 months imprisonment for the possession with the intent to sell or deliver marijuana conviction, with 36 months of supervised probation. Defendant now appeals.

Analysis

I.
Defendant first argues that the trial court erred in denying his motion to dismiss. Specifically, defendant argues that the corpus delicti rule requires that a confession be accompanied by substantial evidence aliunde that corroborates the confession, and that such evidence was lacking in this case.[1]
The "corpus delicti requires that there be corroborative evidence, independent of the . . . [confession or admission], before defendant may be found guilty of the crime." State v. Trexler, 316 N.C. 528, 531, 342 S.E.2d 878, 880 (1986). In State v. Parker, 315 N.C. 222, 337 S.E.2d 487 (1985), our Supreme Court performed a detailed analysis of the corpus delicti rule. The Court pointed out that the purpose behind the rule is "to protect against convictions for crimes that have not in fact occurred." Id. at 236, 337 S.E.2d at 495. The Court noted that the traditional rule in North Carolina is as follows:
To establish guilt in a criminal case, the prosecution must show that (a) the injury or harm constituting the crime occurred; (b) this injury or harm was caused by someone's criminal activity; and (c) the defendant was the perpetrator of the crime. It is generally accepted that the corpus delicti consists only of the first two elements, and this is the North Carolina rule.
Id. at 231, 337 S.E.2d at 492-93 (footnotes omitted).
According to the Court in Parker, the traditional formulation of the corpus delicti rule "requires that there be corroborative evidence, independent of the defendant's confession, which tends to prove the commission of the crime charged." Id. at 229, 337 S.E.2d at 491.
In Parker, the Court stated:
We adopt a rule in non-capital cases that when the State relies upon the defendant's confession to obtain a conviction, it is no longer necessary that there be independent proof tending to establish the corpus delicti of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime.
Id. at 236, 337 S.E.2d at 495. In Trexler, decided a year after Parker, the Court explained that the corpus delicti rule is still satisfied where the "independent proof [of the traditional rule] is lacking, but there . . . is substantial independent evidence tending to furnish strong corroboration of essential facts contained in defendant's confession so as to establish trustworthiness of the confession." Trexler, 316 N.C. at 532, 342 S.E.2d at 881.
The corpus delicti rule is satisfied by the facts present in this case as there was substantial independent evidence tending to establish the confession's trustworthiness, "including facts that tend to show the defendant had the opportunity to commit the crime." Parker, 315 N.C. at 236, 337 S.E.2d at 495.
Here, police found two clear, plastic bags of cocaine, one bag beside a bed in plain view and one in the attic. Police also found a bag of marijuana and a set of scales. Defendant confessed to a police detective that the "clear plastic bag with narcotics in the bedroom was his" and that "he had hidden it in there in the middle part of the day." Additionally, after defendant's mother was interviewed by police, she provided a written statement that stated that "she suspected [the drugs] may belong to her son, [defendant]." A key to the apartment, while not in defendant's exclusive possession, was found near defendant's seat in the vehicle. Taken as a whole, these facts corroborate the truthfulness of defendant's confession, satisfying the Parker formulation of the corpus delicti rule.
In sum, we find that the trial court did not err in denying defendant's motion to dismiss the charges pursuant to the corpus delicti rule.

II.
Defendant argues that the trial court did not conduct a sufficient inquiry into potential juror misconduct and thus erred in denying defendant's motion for a mistrial. For the following reasons, we find that the trial judge did conduct a sufficient inquiry, and thus, we find no error.
"The court's determination of whether misconduct has occurred, and if so, whether it is prejudicial, will not be disturbed on appeal unless the ruling is clearly an abuse of discretion." State v. Childers and State v. Thompson, 80 N.C. App. 236, 245, 341 S.E.2d 760, 765-66, disc. review denied, 317 N.C. 337, 346 S.E.2d 142 (1986). This Court has held that "`[w]here juror misconduct is alleged . . . the trial court must investigate the matter and make appropriate inquiry.' However, there is no absolute rule that a court must hold a hearing to investigate juror misconduct upon an allegation." State v. Harris, 145 N.C. App. 570, 576-77, 551 S.E.2d 499, 503 (2001), disc. review denied, 355 N.C. 218, 560 S.E.2d 146 (2002) (quotation omitted). While the trial court determines "`the existence and effect of jury misconduct[,]' . . . [it] retains sound discretion over the scope of any such inquiry." State v. Murillo, 349 N.C. 573, 599, 509 S.E.2d 752, 767 (1998) (quoting State v. Bonney, 329 N.C. 61, 83, 405 S.E.2d 145, 158 (1991)).
During defendant's trial, Fountain and defendant's sister, Kim Kennedy ("Kennedy"), claimed that they saw two jurors communicating with a police officer who, according to Fountain, was at the scene the evening defendant was arrested. The court questioned Fountain, who stated that, after court was adjourned, she and Kennedy saw the two jurors speaking with the police officer, who was seated inside his patrol car. Fountain was unable to identify the officer. She admitted that she could not hear the alleged conversation between the officer and the jurors. She further stated that the officer had not been called to testify, nor was he present in the court room.
Kennedy was also questioned by the court regarding this incident. Her testimony was similar to Fountain's in that she did not recognize the officer or hear the conversation; however, Kennedy identified a different juror as being one of the individuals conversing with the officer. The trial court was then willing to conduct an individual voir dire of the identified jurors, if a request was made by either party. Both parties declined, but defense counsel made a motion for a mistrial, which was denied.
Once the jury returned to the courtroom, the judge asked the jurors collectively: "Have any of you had any contact with anybody associated with either side in the case?" and "[h]as anyone talked to you or talked in your presence about this case?" None of the jurors responded affirmatively, and trial resumed. Later, the court again expressed a willingness to conduct individual inquiries if requested by the parties, but stated that evidence was too speculative for a mistrial.
The case law demonstrates that while the trial court must inquire into the alleged juror misconduct, the method and scope of that inquiry is in the discretion of the judge. Murillo, 349 N.C. at 599, 509 S.E.2d at 767. Here, it is clear that the judge made the necessary inquiry, as demonstrated by his questioning of Fountain and Kennedy, and by the two general questions that were asked of the jury. However, the court concluded that the evidence presented was too speculative to justify a mistrial.
The case of State v. Selph, 33 N.C. App. 157, 234 S.E.2d 453 (1977) is similar to the present case. During the defendant's trial in Selph, a juror was seen conversing with the mother of the defendant's alleged accomplice during a lunch recess. Id. at 158, 234 S.E.2d at 453. The trial court allowed counsel to question the witnesses to the conversation, but refused the defendant's request to thoroughly examine the juror until he had more information concerning the impropriety. Id. at 158-59, 234 S.E.2d at 454. When the jury returned, the court asked the jurors two general questions regarding any improper conversations concerning the case; when there was no response, the trial continued. Id. at 159, 234 S.E.2d at 455. The defendant argued on appeal that "the judge should have made findings of fact and conclusions of law regarding allegations and evidence of possible jury misconduct" with a more "vigorous examination." Id. at 160, 234 S.E.2d at 455. This Court disagreed, holding "the trial judge's inquiry was sufficient to guarantee an impartial jury and to satisfy due process." Id. at 161, 234 S.E.2d at 456.
In sum, we find that the trial court did not abuse its discretion in denying defendant's motion for a mistrial because the judge did conduct a proper inquiry into alleged juror misconduct and found that the evidence was too speculative to warrant a mistrial.

Conclusion
The trial court in this case did not err in denying defendant's motion to dismiss and motion for a mistrial.
No Error.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).
NOTES
[1] While defendant includes assignments of error alleging the insufficiency of the evidence to establish constructive possession, the arguments contained in defendant's brief do not address constructive possession; but rather, focus only on the sufficiency of the confession for the corpus delicti requirement. Therefore these assignments of error are deemed abandoned. N.C.R. App. P. 28(b)(6).