STATE OF NORTH CAROLINA v. JIMMY EUGENE GREEN

No. 6

(Filed 6 June 1978)

**1. Homicide § 21.7; Rape § 5— defendant's confession—sufficiency of evidence**

Evidence was sufficient for the jury in a prosecution for murder and rape where it tended to show that the victim's body was found in woods near the motel where she was staying; there were multiple stab wounds in the body and decedent's clothing was in general disarray; medical examination revealed the presence of spermatozoa in the vagina; defendant was employed in the area where the victim worked; on the morning after the crime was committed, defendant told two people that he had engaged in sexual intercourse on the preceding night; and defendant confessed to the rape and murder of the victim.

**2. Criminal Law § 106.4— sufficiency of evidence—evidence required in addition to confession**

A confession will be sufficient to carry the case to the jury when the State offers such extrinsic corroborative evidence as will, when taken in connection with the confession, establish that the crime was committed and that the accused was the perpetrator of the crime.

**3. Criminal Law § 106.4— confession—reliability—sufficiency of evidence**

Defendant's contention that his motion for nonsuit should have been granted because his mental condition and proclivity for telling untruths in order to gain attention and favor made his confessions so unworthy of belief as to be without probative value, and these unreliable confessions were the only evidence indicating that he was the perpetrator of the crimes charged is without merit, since defendant's expert psychiatric evidence did not establish to a certainty that his confessions were false and therefore without probative value; rather, the evidence merely tended to cast some doubt upon the credibility of defendant's confessions.

State v. Green

APPEAL by defendant from *Ferrell, J.*, 23 May 1977 Session of CLEVELAND Superior Court.

Defendant was charged, by indictments proper in form, with first degree rape and first degree murder. The cases were consolidated for trial, and defendant entered a plea of not guilty to each charge.

The State offered evidence tending to show that Mrs. Rosemary Knauer was operating a penny arcade with a traveling show in Shelby, North Carolina, during the first week in October, 1976. She had employed defendant to assist her in the operation of the penny arcade. Mrs. Knauer was living at the Kings Mountain Inn, and on 4 October 1976, police officers were called to the Inn to investigate a report that she was missing. Shortly after their arrival, the police found Mrs. Knauer's body in a wooded area behind the motel. She had suffered multiple stab wounds, and her clothes were bloody, torn and in general disarray. There was medical testimony to the effect that Mrs. Knauer had been stabbed more than 24 times and that she died as a result of these wounds. Examination disclosed the presence of spermatozoa in her vagina.

S.B.I. Agent James C. Woodard testified as to certain statements made to him by defendant. Defendant had moved to suppress these extra-judicial statements, and prior to selection of the jury, a *voir dire* hearing was conducted in the absence of the jury panel. At the conclusion of this hearing, the trial judge found facts, entered conclusions of law, and overruled defendant's motion to suppress. In his testimony before the jury, Agent Woodard stated that he saw defendant on 6 October, and defendant initiated a conversation by asking Agent Woodard if he thought that he (defendant) could have killed Mrs. Knauer. The agent replied that he did not know. Defendant later said that he did not kill Mrs. Knauer. Agent Woodard again talked with defendant on 21 October 1976 in the mental ward of the South Carolina State Hospital in Columbia, South Carolina. Before this conversation, he gave defendant *Miranda* warnings and obtained a written waiver of rights. At that time, defendant made conflicting statements concerning his complicity in the murder and rape of Mrs. Knauer. Defendant was not detained.

On 4 January 1977, Agent Woodard saw defendant in a mental institution in Florida. After he warned defendant of his constitutional rights, defendant signed a waiver of rights. He then told Agent Woodard that on 3 October 1976 he saw Mrs. Knauer in a laundromat in Shelby, North Carolina, and she asked him to ride with her to her motel. Upon arrival, defendant took Mrs. Knauer's Doberman Pinscher into her motel room and assisted her in unloading various articles from her automobile. Defendant stated he then made sexual advances to Mrs. Knauer and when he was rejected, he seized Mrs. Knauer and attempted to cut her. After a scuffle, Mrs. Knauer managed to break away, but he caught her and by threat of using a knife made her walk into the woods. He there forced her to the ground, ripped her clothing, and proceeded to forcibly have intercourse with her. When Mrs. Knauer told him, "you'll pay for this," he stabbed her in the stomach, back and throat. He returned to the fairground the next morning. After this statment was made, Agent Woodard caused a warrant to be issued in North Carolina charging defendant with first degree murder, and the Sheriff's Department in Baker County, Florida, placed defendant under arrest on a fugitive warrant. On the following day, Agent Woodard obtained a tape recording which was, in substance, the same as the above statement. This tape recording was admitted into evidence over defendant's objection.

There was other testimony to the effect that on 4 October, defendant told two people that he had engaged in sexual intercourse on the preceding night.

Defendant's only witness was Dr. Billy W. Royal. It was stipulated that Dr. Royal was a medical expert specializing in forensic psychiatry. Dr. Royal testified that defendant was under his care at Dorothea Dix Hospital from 20 January until 5 February 1977 and from 9 March to 18 May 1977. Defendant was initially admitted to the hospital for the purpose of evaluating his competency to stand trial. The doctor stated that he had many interviews with defendant and saw him daily. Defendant was also given psychological and intelligence tests by other hospital personnel. The witness stated that, in his opinion, defendant suffered from schizophrenic reaction, latent type. His behavior involved telling untruths in order to get attention. Defendant had given

him a history of epileptic seizures, but in the witness's opinion, defendant had not suffered true epileptic seizures. The doctor stated that the intelligence tests given defendant revealed that he had borderline normal intelligence, and in his opinion, defendant was competent to stand trial. Dr. Royal further testified:

> Yes, from all of the history that I got from the defendant and the history that I got from the relatives, it was my opinion that the patient was aware of the charges against him, the consequences of the charges, that he was able to work with his attorney, if he so chose, in terms of his defense, and that he was able to discern right from wrong. It was also my opinion that the defendant was competent at the time of the alleged crime.

The jury returned verdicts of guilty of first degree rape and guilty of second degree murder. The trial judge imposed a sentence of life imprisonment on the verdict of guilty of first degree rape and a sentence of imprisonment for a period of forty years on second degree murder, to run consecutively.

*Rufus L. Edmisten, Attorney General, by John R. Wallace, Associate Attorney, for the State.*

*Jim R. Funderburk, for defendant appellant.*

BRANCH, Justice.

The sole question presented by this appeal is whether the trial court erred by denying defendant's motion to dismiss the charges against him.

When a defendant moves for judgment as of nonsuit or dismissal in a criminal action, the trial judge must consider the evidence in the light most favorable to the State, take it as true and give the State the benefit of every reasonable inference to be drawn therefrom. If there is evidence, whether direct, circumstantial or both, from which a jury could find that the offense charged had been committed and that the defendant committed it, the motion for judgment as of nonsuit or dismissal should be overruled. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971); *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968).

[1]   In instant case, the State presented evidence which tends to show that on 4 October 1976 the body of Rosemary Knauer was found in the woods near the Kings Mountain Inn. Police officers observed multiple stab wounds on the body and observed that the decedent's clothing was in general disarray and that the rear seam of her pants was split. Medical examination of the body revealed the presence of spermatozoa in the vagina. In the opinion of the medical examiner, death was due to multiple stab wounds. There was evidence that defendant was employed in the area where the victim worked and that on the morning after the crime was committed, he stated that he had engaged in sexual intercourse on the preceding night. Further, the State introduced defendant's confessions to the rape and murder of Rosemary Knauer.

Taken in the light most favorable to the State, this evidence gives rise to reasonable inferences that Rosemary Knauer was forcibly raped and murdered and that defendant was the perpetrator of these crimes.

[2]   Admittedly, defendant's confessions were the only evidence which clearly pointed to him as the perpetrator of the crimes. The rule in this jurisdiction is that a conviction cannot be sustained upon a naked extra-judicial confession. There must be independent proof, either direct or circumstantial, of the *corpus delicti* in order for the conviction to be sustained. This does not mean that the evidence tending to establish the *corpus delicti* must also identify the accused as the one who committed the crime. *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961); *State v. Cope*, 240 N.C. 244, 81 S.E. 2d 773 (1954). *See also*, *State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972). A confession will be sufficient to carry the case to the jury when the State offers such extrinsic corroborative evidence as will, when taken in connection with the confession, establish that the crime was committed and that the accused was the perpetrator of the crime. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975).

[3]   Here the State established the *corpus delicti* without reliance upon defendant's confessions, and without further showing, it would appear that the trial judge correctly denied defendant's motion to dismiss. Defendant nevertheless contends that his mental condition and proclivity for telling untruths in order to gain attention and favor make his confessions so unworthy of

belief as to be without probative value. He argues that since these inherently unreliable confessions are the only evidence indicating that he was the perpetrator of the rape and murder of Rosemary Knauer, his motion for nonsuit should have been granted. In support of his position, defendant relies upon *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967).

In *Miller*, the only evidence identifying the defendant as the person who committed the crime was the testimony of a witness who was never closer than 286 feet from the scene of the crime. The witness had never seen the defendant before and the only opportunity the witness had to observe the face of the perpetrator of the crime was when the man "peeped" around the side of a building. The witness could not tell the color of the man's hair or the color of his eyes. This Court held that the opportunity for the witness to observe the commission of the crime was not sufficient to reasonably permit the case against the defendant to be submitted to the jury. In so holding, we stated:

> "Ordinarily, the weight to be given the testimony of a witness is exclusively a matter for jury determination. Even so, this rule does not apply when, as here, the only testimony that would justify submission of the case for jury consideration is in irreconcilable conflict with physical facts established by plaintiff's uncontradicted evidence. * * *
>
> "'As a general rule, evidence which is inherently impossible or in conflict with indisputable physical facts or laws of nature is not sufficient to take the case to the jury, and in case of such inherently impossible evidence, the trial court has the duty of taking the case from the jury.'" [Citations omitted] 270 N.C. at 731.

Defendant's reliance upon *Miller* is misplaced. Our rationale for rejecting the evidence in *Miller* was that the witness's testimony was contrary to the laws of physics and the laws of nature. Based upon the witness's own testimony, we held that it would have been physically impossible for him to have seen the robber so that he could later identify him.

Here defendant's reliance is upon evidence indicating that he is a latent schizophrenic which is accompanied by behavioral activity designed to obtain attention. Defendant's expert witness,

Dr. Royal, testified that if defendant felt it would be to his advantage he could tell a lie. However, Dr. Royal also testified that defendant is not incapable of telling the truth and that, in fact, defendant does on occasion tell the truth. He further unequivocally testified that in his opinion defendant had sufficient mental capacity to know right from wrong, to be aware of the charges against him, to be aware of the consequences of such charges, and to work with his attorney in terms of his defense.

While this evidence does give rise to the possibility that defendant falsely confessed to the rape and murder of Rosemary Knauer in order to gain attention, it does not preclude the possibility that the confessions were truthful. Defendant's evidence does not establish *to a certainty* that his confessions were false and therefore without probative value. The most that can be said is that it tends to cast some doubt upon the *credibility* of his confessions. The weight and credibility to be accorded to defendant's confessions are, however, matters solely for determination by the jury. *State v. Clyburn*, 273 N.C. 284, 159 S.E. 2d 868 (1968).

The State's independent evidence, when considered with defendant's confessions, was sufficient to carry the case to the jury on the charges of first degree murder and first degree rape. We, therefore, hold that the trial judge did not err by denying defendant's motion for dismissal of the charges against him.

For the reasons stated, we find no error sufficient to disturb the verdicts or judgments entered thereon.

No error.