STATE OF NORTH CAROLINA v. WALTER LEE SINCLAIR

No. 7912SC525

(Filed 20 November 1979)

1. **Larceny § 7; Criminal Law § 106.4— confession—corroborating evidence—sufficiency of evidence**

In a prosecution for breaking and entering and larceny, there was sufficient evidence corroborating defendant's confession to take the case to the jury, though an officer testified that he found no stolen property in

defendant's possession and that the only evidence he had connecting defendant to the crime was his statement, where the evidence tended to show that defendant lived next door to the premises broken into and defendant showed an officer where another person, who defendant contended committed the crime, had hidden stolen items.

**2. Indictment and Warrant § 17.2— larceny—time of offenses—no fatal variance**

In a prosecution for breaking and entering and larceny where the premises allegedly were broken into on two consecutive nights, there was no fatal variance between indictment and proof as to the date of the crimes charged in view of the fact that defendant did not rely upon an alibi for either of the nights in question; the indictment charged defendant with theft on the first night; and there was some evidence from which the jury could find that the items defendant confessed to stealing were taken in the first break-in.

**3. Criminal Law § 75— confession—voluntariness**

Evidence that the interrogating officer had known defendant for years, that defendant did not appear frightened during questioning, that the officer used a normal tone of voice and questioned defendant for 20-30 minutes, that the officer explained defendant's rights, and that he read defendant's statement and explained what it said before defendant signed it was sufficient to support a finding that the statement was voluntarily and understandingly made.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 22 March 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 17 October 1979.

Defendant was indicted for breaking and entering and larceny. Bobby C. Fulmore testified that on the morning of 18 March 1978 he returned to his residence and found that it had been ransacked. The front door was unlocked and the lock was broken. He did not know exactly what was taken, but "some tapes" and "other items" were missing. He asked defendant, who lived next door, if he had seen anyone enter the house, and defendant said no.

Fulmore was away from home until 12:30 or 1 a.m. on 19 March, and he returned to find that his house had been broken into again. Some clothes, food from the refrigerator, stereo equipment and mag wheels were missing.

Officer Merritt of the Fayetteville police informed defendant on 22 March that he was a suspect in a break-in at Fulmore's, and asked defendant to accompany him to the Law Enforcement Center. There defendant was read his rights, indicated he understood them, and signed the rights form, which included a

consent to be questioned. Merritt had known defendant practical-
ly all his life and knew that defendant is retarded. Defendant,
when questioned, denied several times that he knew anything
about the incident and then confessed his involvement. The state-
ment was reduced to writing and Merritt read it to defendant
before defendant signed it. Defendant can read some, and he was
able to recognize a few of the words on the statement. Defendant
did not appear frightened while in Merritt's presence. Merritt
testified further that he found nothing of Fulmore's in defendant's
possession, and that the only evidence he had to connect defend-
ant to the break-in was defendant's statement.

Defendant's statement, which was introduced into evidence,
indicated that he and two others, Lane and Smith, broke into
Fulmore's house "on Friday night" through the back door, which
already had a pane of glass broken out. They took three tapes, a
white-and-brown sweater, and a steak TV dinner. They ate the
dinner and hid the sweater beside a fence.

Defendant testified that he did not break into Fulmore's
house, and that he told Merritt he did so because he was scared.
Merritt "talked about locking me up and I didn't want to be
locked up." He had shown Merritt where Lane hid "the stuff," but
he didn't help hide it.

Defendant was found guilty of felonious breaking and enter-
ing and felonious larceny and sentenced to three years. He ap-
peals.

*Attorney General Edmisten, by Special Deputy Attorney
General Edwin M. Speas, Jr. and Susan G. Kelly, for the State.*

*Arthur L. Lane, by Paul B. Eaglin, for defendant appellant.*

ARNOLD, Judge.

[1] It is recognized as established law that "a felony conviction
may not be based upon or sustained by a naked extrajudicial con-
fession of guilt uncorroborated by any other evidence." *State v.
Jenerett*, 281 N.C. 81, 85-86, 187 S.E. 2d 735, 738 (1972). This prin-
ciple appeared in North Carolina case law as early as 1797, where
a defendant was indicted for horse-stealing. *State v. Long*, 2 N.C.
455 (per curiam). The only evidence in that case was that the
horse had been missing, that two men had brought the horse and

the defendant to the house of the owner, and that the defendant had confessed that he had taken the horse and had begged forgiveness. The court said:

> Where A makes a confession, and relates circumstances which are proven to have actually existed as related in the confession, that may be evidence sufficient for a jury to proceed upon to convict the prisoner; but a naked confession, unattended with circumstances, is not sufficient. A confession, from the very nature of the thing, is a very doubtful species of evidence, and to be received with great caution. It is hardly to be supposed that a man perfectly possessed of himself would make a confession to take away his own life. It must generally proceed from a promise or hope of favor, or from a dread of punishment, and in such situations the mind is agitated — the man may be easily tempted to go further than the truth. Besides, the witness, respecting the confession, may have mistaken his meaning. How easy is it to understand the speaking differently from what he meant; and the smallest mistake in this particular might prove fatal. As there are no confirmatory circumstances in the present case, it is better to acquit the prisoner.

*Id.* at 456. More recently, however, the court has stated that while "there must be evidence *aliunde* the confession of sufficient probative value to establish the fact that a crime of the character charged has been committed," the independent evidence need not also identify the defendant as the one who committed the crime, *State v. Cope*, 240 N.C. 244, 247, 81 S.E. 2d 773, 776 (1954), and that language has been relied upon in almost every case on the point.

In the majority of the cases dealing with the rule the independent evidence has in fact shown some connection between the defendant and the crime. *E.g. State v. Jenerett, supra* (testimony of witnesses that defendant was the robber); *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969) (defendant seen running from the scene near time of crime); *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232 (1963) (evidence that deceased was seen with defendant shortly before she disappeared and that her body was found where he said he had placed it, injured as he had said); *State v. Hauser,* 257 N.C. 158, 125 S.E. 2d 389 (1962) (stolen goods

found in defendant's possession). And on occasion the court has found that there was insufficient independent evidence to sustain a conviction. In *State v. Bass*, 253 N.C. 318, 116 S.E. 2d 772 (1960), the court found the evidence insufficient, saying, "[t]here is no direct evidence to connect defendant with the commission of the crime. The evidence offered is circumstantial, conjectural, and speculative." *Id.* at 323, 116 S.E. 2d 776. Likewise in *State v. Cope, supra*, the court reversed the defendant's conviction, there because there was no independent evidence that the sexual offenses with which the defendant was charged had ever been committed.

Several decisions from this court have upheld convictions where there was no independent evidence connecting the defendant with the crime. *E.g. State v. Thomas*, 17 N.C. App. 152, 193 S.E. 2d 297 (1972); *State v. Thomas*, 15 N.C. App. 289, 189 S.E. 2d 765, *cert. denied* 281 N.C. 763, 191 S.E. 2d 360 (1972); *State v. Macon*, 6 N.C. App. 245, 170 S.E. 2d 144 (1969), *aff'd* 276 N.C. 466, 173 S.E. 2d 286 (1970). And recently, in the case of *State v. Green*, 295 N.C. 244, 244 S.E. 2d 369 (1978), our Supreme Court upheld the defendant's convictions on charges of rape and murder where the only evidence which could have connected the defendant to the crimes was that he had been employed in the area where the victim worked and that the morning after the crimes he had told two people that he had engaged in sexual intercourse the night before. In light of the *Green* decision, we find that there was sufficient corroborating evidence in the instant case to take the case to the jury, though Officer Merritt testified that he found nothing of Fulmore's in defendant's possession and that "[t]he only evidence I have which connects Sinclair to this breaking is his statement."

[2] We find that defendant cannot prevail on his other assignments of error. He argues first that there was a fatal variance between the allegation in the indictment that the crimes were committed on 17 March and the proof at trial. However, as defendant recognizes, a variance which relates to the date of a larceny is not fatal unless time is of the essence or the statute of limitation is at issue. *State v. Locklear*, 33 N.C. App. 647, 236 S.E. 2d 376, *cert. denied* 293 N.C. 363, 237 S.E. 2d 851 (1977). Defendant argues that time was of the essence here because there were two break-ins on successive nights and the items defendant con-

fessed to stealing were taken on the second night, while the indictment charged him with the theft on the first night. The record is not clear as to which night the enumerated items were taken, however. Fulmore first testified that in the first break-in the items taken included "some clothes and some food from the refrigerator . . . stereo equipment and mag wheels." He later testified that those items were missing when he returned after the second night. In view of the fact that defendant has not relied upon an alibi for either of the nights in question, and that there was some evidence from which the jury could find that the items defendant confessed to stealing were taken in the first break-in, we find no fatal variance.

[3] Defendant also argues that his confession should not have been admitted into evidence because of questions as to whether it was voluntarily and understandingly made. See *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975), death penalty vacated 428 U.S. 908, 49 L.Ed. 2d 1213, 96 S.Ct. 3215 (1976). It appears in defendant's brief, though not in the record, that defendant moved prior to trial to suppress the confession, and his motion was denied. Also according to defendant's brief, "[a] copy of the Order denying the Motion could not be found in the defendant's file maintained by the Clerk of Superior Court." No reference to the motion to suppress appears in the record. When the State offered defendant's statement into evidence, defendant objected and his objection was overruled.

Since the court's order denying the motion to suppress does not appear, we are not able to determine what facts, if any, were found by the trial court to support its decision that the confession was admissible. Furthermore, defendant's counsel has not included in the record the substance of that order, so we have no basis for review. We do note, however, that sufficient evidence appears in the record to support a finding that the confession was both voluntarily and understandingly made. Officer Merritt testified that he had known the defendant for years, and that defendant did not appear frightened while in his presence. Merritt used a normal tone of voice, and questioned defendant for 20-30 minutes. He read defendant the rights form and explained it to him, and he also read the statement to defendant and explained what it said before defendant signed it. Upon these facts we do not find as a

matter of law that this statement was involuntary or made without understanding. *See State v. Thompson, supra.* In defendant's trial we find

No error.

Judges WEBB and WELLS concur.