STATE OF NORTH CAROLINA, Plaintiff v. JOSHUA DAVID SMITH, Defendant

No. COA07-172

(Filed 6 May 2008)

**1. Sexual Offenses— first-degree sexual offense—motion to dismiss—sufficiency of evidence—extrajudicial statement without corroborating evidence**

The trial court erred by denying defendant's motion to dismiss the charge of first-degree sexual offense with a child under thirteen because: (1) when the State relies on a defendant's extrajudicial statement to establish guilt of a felony, the extrajudicial statement alone is not sufficient to sustain a conviction; (2) none of the evidence relied on by the State to corroborate defendant's statement to a detective was sufficient when a witness's testimony as to what defendant told him after defendant left the detective's office was not independent of defendant's confession, the testimony that a visit with the victim did occur and that defendant drank until he passed out corroborated some of the circumstances of defendant's confession but was not strongly corroborative of any essential fact, and defendant's own trial

testimony did not provide evidence of the corpus delicti for sexual offense but only served to clarify what defendant meant; and (3) the victim failed to testify as to any sexual encounter with defendant and never made any prior statement that any sexual act ever occurred with defendant.

**2. Indecent Liberties— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of indecent liberties under N.C.G.S. § 14-202.1, because viewing the evidence in the light most favorable to the State revealed that even though the jury's acquittal of defendant of rape showed that they disbelieved at least part of the victim's account of the facts, the evidence supported a finding that defendant undressed the victim and exposed his penis to her at his home.

**3. Indecent Liberties— plain error analysis—identification of alleged acts—jury instructions**

The trial court committed plain error by failing to require the State to identify the alleged acts by defendant which were the basis of the indecent liberties charges and by not identifying the basis to the jury in its instructions, and the case is remanded for a new trial on the issue of indecent liberties, because: (1) a consideration of the entire record, the instructions as a whole, and the fact that the trial court erred in its failure to grant defendant's motion to dismiss the first-degree sexual offense charge, the jury probably would have reached a different verdict if it had been instructed properly; (2) the State itself did not even identify the evidentiary basis which the Court of Appeals found for the indecent liberties conviction, but instead was relying on an act of fellatio which was not a proper basis for conviction under the corpus delicti rule; and (3) the jury was confused by the instructions and contentions, particularly in light of the distinct possibility that it considered fellatio as defendant's main criminal sexual act with the victim.

Judge TYSON dissenting.

Appeal by defendant from judgment entered on or about 27 July 2006 by Judge Linwood O. Foust in Cleveland County Superior Court. Heard in the Court of Appeals 18 October 2007.

STATE v. SMITH

[190 N.C. App. 44 (2008)]

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Sarah Y. Meacham, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III, and Kirby H. Smith, III, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from judgment entered 27 January 2006 sentencing him to 196 to 245 months for first degree sexual offense and indecent liberties with a child. We conclude: (1) the State did not present sufficient evidence to convict defendant of first degree sexual offense, and (2) defendant was prejudiced by errors such that he did not receive a fair trial for indecent liberties. Accordingly, we reverse defendant's conviction for first degree sexual offense, and we grant defendant a new trial on the charge of indecent liberties with a child.

## I. Background

The testimony presented at trial tended to show the following: In December 2002, defendant, then twenty-one years old, lived in Lawndale, North Carolina, with his girlfriend Cassie and their three-month old daughter, "Kathy". The prosecutrix, "Karen",[1] who was twelve years old at the time, lived in Lawndale with her grandmother, mother and her nineteen year-old brother Jonathan. Karen knew Cassie prior to December 2002, as Jonathan and Cassie had previously had a romantic relationship. Karen first met defendant shortly before Christmas 2002, when Cassie introduced them. Defendant was also Jonathan's friend, and defendant, Cassie and Jonathan often socialized together in the evenings.

Around Christmas 2002, defendant and Cassie visited in Jonathan and Karen's home on two consecutive evenings.[2] On one of the visits ("Visit 1"), defendant brought alcohol which he shared with Jonathan and a fifteen year-old neighbor while they smoked marijuana; defendant drank until he passed out. On the other visit ("Visit 2"), the evidence is conflicting as to whether defendant was sober or drunk.

Defendant asserted that during Visit 1 he awoke from his drunken stupor to find Karen sitting between his legs with her hands on his

---

1. In order to protect the identity of minors, we will refer to them by pseudonym.

2. Karen asserted that the visits were on December 25 and 26; defendant asserted that the visits were on December 26 and 27.

penis, preparing to perform fellatio. Karen asserted that defendant made lewd comments to her during Visit 1, but she had no sexual contact with him.

During Visit 2, defendant, accompanied by Karen and Kathy, left Cassie and Jonathan to return home in order to pick up milk and diapers for Kathy. Karen testified that once they were inside defendant's home, he pushed her down on the bed, removed her clothing and inserted his penis into her vagina. To the contrary, defendant testified that he had told Karen to stay in the truck with Kathy while he went inside the house to get the milk and diapers, and that even though she came into the house briefly, they had no physical contact.

On 14 April 2003, the Cleveland County Grand Jury indicted defendant for first degree rape of a child pursuant to N.C. Gen. Stat. § 14-27.2(a)(1), first degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4, and indecent liberties with a child pursuant to N.C. Gen. Stat. § 14-202.1, each with a stated offense date of 26 December 2002. The indictments referenced the statutes under which defendant was charged and identified the date of offense for each crime as 26 December 2002, but did not allege any specific sexual acts upon which defendant was charged, as allowed by N.C. Gen. Stat. § 15-144.1 and § 15-144.2(b) (2001).

Defendant was tried before a jury from 24 to 27 July 2006. At trial, at the close of the State's evidence and at the close of all the evidence, defendant moved to dismiss all of the charges against him, and these motions were denied. The trial court instructed the jury on first degree rape of a child under the age of thirteen, first degree sexual offense with a child under the age of thirteen, attempted first degree sexual offense, and taking indecent liberties with a minor child.

On 27 July 2006, the jury found defendant guilty of first degree sexual offense with a child under thirteen and guilty of taking indecent liberties with a child, but not guilty of first degree rape of a child. The trial court consolidated the offenses for sentencing and ordered that defendant be imprisoned for a minimum of 196 and a maximum of 245 months in the North Carolina Department of Corrections. Defendant gave notice of appeal in open court.

## II. First Degree Sexual Offense

[1] Defendant first assigns error to the trial court's denial of his motion to dismiss the charge of first degree sexual offense. He contends that the State failed to present substantial evidence that he had

been involved in a sexual act with Karen. Specifically, he relies on the *corpus delicti* rule as stated in *State v. Sinclair*, 43 N.C. App. 709, 259 S.E.2d 808 (1979), contending that "a felony conviction may not be based upon or sustained by a naked extrajudicial confession of guilt uncorroborated by any other evidence," *id.* at 711, 259 S.E.2d at 809 (citation and quotation omitted).

A criminal defendant may

> move to dismiss a criminal charge when the evidence is not suffi-
> cient to sustain a conviction. Evidence is sufficient to sustain a
> conviction when, viewed in the light most favorable to the State
> and giving the State every reasonable inference therefrom, there
> is substantial evidence to support a jury finding of each essential
> element of the offense charged, and of defendant's being the per-
> petrator of such offense. The denial of a motion to dismiss for
> insufficient evidence is a question of law, which this Court re-
> views *de novo*.

*State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (internal citations, brackets and quotation marks omitted). On review of a motion to dismiss, "[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration, [although if] it is consistent with the State's evidence, the defendant's evidence may be used to explain or clarify that offered by the State." *State v. Denny*, 361 N.C. 662, 665, 652 S.E.2d 212, 213 (2007) (internal citations and quotation marks omitted).

When the State relies on a defendant's extrajudicial statement to establish guilt of a felony, the extrajudicial statement alone is not suf-ficient to sustain a conviction. *Sinclair*, 43 N.C. App. at 711, 259 S.E.2d 809. An extrajudicial statement must be supported by (1) "cor-roborative evidence, independent of defendant's confession, which tends to prove the commission of the charged crime[,]" *State v. Sloan*, 316 N.C. 714, 725, 343 S.E.2d 527, 534 (1986); or (2) "*strong* [independent] corroboration of *essential* facts and circumstances embraced in the defendant's confession" which tends to establish the trustworthiness of the confession, *State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985) (emphasis in original). In a prosecution for a sexual offense, corroboration need not necessarily come from the victim herself, *State v. Cooke*, 318 N.C. 674, 679, 351 S.E.2d 290, 292 (1987) ("[T]here is no requirement that the victim testify before the accused may be convicted."), but whatever the source, the corrobo-rating evidence must do more than merely "raise a suspicion or con-

jecture" as to the commission of the offense. *State v. Mueller*, 184 N.C. App. 553, 560, 647 S.E.2d 440, 447, *cert. denied*, 362 N.C. 91, ⸺ S.E.2d ⸺ (2007).

> A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
>
> (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

N.C. Gen. Stat. § 14-27.4(a)(1) (2001).

> "Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but *does not include vaginal intercourse*. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]

N.C. Gen. Stat. § 14-27.1(4) (2001) (emphasis added). "[F]ellatio is any touching of the male sexual organ by the lips, tongue, or mouth of another person." *State v. Johnson*, 105 N.C. App. 390, 393, 413 S.E.2d 562, 564, *disc. review denied and appeal dismissed*, 332 N.C. 348, 421 S.E.2d 158 (1992).

The State relied on the following extrajudicial statement of defendant, as testified to by Detective Debbie Arrowood:

> Joshua stated to me that he was at [Karen's] house a couple of days before [Visit 2] and he had been drinking. Joshua stated he was in Jonathan's bedroom, who is [Karen's] brother, and he was lying on the bed. Joshua stated [Karen] came in the room and was coming on to him. Joshua told me that [Karen] took her pants off, [and] laid down beside him on the bed. Joshua stated [Karen] wanted him to do oral sex on her, but he wouldn't do it. Joshua stated [Karen] unzipped his pants, took out his penis, and tried to give him a blow job. Joshua stated he couldn't get it up because he had been drinking, so [Karen] stopped.

The State contends that defendant's extrajudicial statement was corroborated by (1) Jonathan's testimony that "[defendant] was upset when he come [sic] out of Ms. Arrowood's office . . . . I asked him what happened, you know, and he told me that he had, you know, failed, and he admitted to having oral sex with [Karen;]" (2) testimony from Karen, Jonathan and defendant that Visit 1 did in fact occur and that defendant passed out from excessive drinking at Karen's home; and (3) defendant's own trial testimony.

The relevant portion of defendant's trial testimony is as follows:

I passed out . . . fully clothed.

. . . .

I was awakened a couple hours after I had passed out.

. . . .

When I came to, I felt something on me. I didn't know what it was, who it was. I panicked. I was frightened, shocked, and all in one motion, I rose up and kicked. And when I kicked, I looked in the floor and it was [Karen] sitting in the floor. I jumped up and I asked her what the hell she was doing. I zipped my pants up. I remember rubbing my eyes, rubbing my head, trying to collect myself and still, still drunk, not collected, hung over, and she was begging me not to say anything to her mother: "Please don't tell mama; please don't tell Cassie; please don't tell Jonathan."

. . . .

It was a feeling that—it's not like being tapped on the shoulder. It's a feeling not being tapped on your forehead, being shook. It's a private position—a private place that's a sensitive area, and I felt something on my penis.

. . . .

I jumped and kicked and pushed with my leg all at once, and it knocked [Karen] back into the dresser that was across from the bed, on the floor.

We conclude that none of the evidence relied on by the State to corroborate defendant's statement to Detective Arrowood is sufficient to survive defendant's motion to dismiss the charge of first degree sexual offense. Jonathan's testimony as to what defendant told him after defendant left the office of Detective Arrowood was not "independent of defendant's confession," *Sloan*, 316 N.C. at 725, 343 S.E.2d at 534, therefore it has no more probative value than the more detailed statement which defendant gave to Detective Arrowood and does nothing to corroborate defendant's statement to Detective Arrowood. The testimony of Karen, Jonathan and defendant that Visit 1 did indeed occur, and that defendant drank until he passed out corroborates some of the circumstances of defendant's confession, but it does not *strongly* corroborate any *essential* fact. *See Parker*, 315 N.C. at 236, 337 S.E.2d at 495 (holding that when the

victim's dead body and the clothes the defendant wore while committing the murder were the same as described in the defendant's confession and the victim's blood stains were found in a second victim's stolen car, the evidence contained sufficient corroboration of the defendant's confession to support the defendant's conviction for armed robbery even though there was no evidence of the missing property). Defendant's own trial testimony does not provide evidence of the *corpus delicti* for sexual offense in the case *sub judice*—that Karen's mouth, tongue or lips touched defendant's penis. It serves only to clarify what defendant meant by "[Karen] . . . tried to give [me] a blow job[,]" in his statement to Detective Arrowood.

In reviewing the cases decided since *Parker,* we find no set of facts with so very little corroborative weight or substantial independent evidence to establish the trustworthiness of a defendant's extrajudicial statement. *See, e.g., State v. Johnson,* 317 N.C. 343, 373-74, 346 S.E.2d 596, 613 (1986) (bruises, marks and torn clothing on the victim's body, semen in the victim's vagina, bloodstains in the defendant's car and on his knife were sufficient to corroborate the defendant's admission); *Sloan,* 316 N.C. at 725-26, 343 S.E.2d at 534 (discovery of the victim naked from the waist down, discovery of the victim's shorts and panties with semen on them on the kitchen floor, and the victim's testimony that she had been beaten and stripped of her clothing were sufficient to support a rape conviction when the defendant admitted "[he] did it"); *State v. Sims,* 174 N.C. App. 829, 833, 622 S.E.2d 132, 135 (2005) (a controlled buy of twenty-six grams of cocaine from the defendant in his home before arrest and discovery of 181 grams of cocaine on the defendant's person at arrest were sufficient to corroborate the defendant's confession to trafficking in more than 400 grams of cocaine), *disc. review denied,* 360 N.C. 367, 630 S.E.2d 451 (2006).

Many of the events which were occurring in Karen's home around Christmas 2002 were appalling, and no doubt the jury found them so as well. The evidence indicates that defendant was drinking to excess, providing alcohol to persons who were underage, driving while impaired by alcohol, permitting teenagers to use marijuana in his presence, and making lewd comments to a young girl. Karen was apparently mistreated by many, including defendant. However, we also recognize that "[n]o matter how disgusting and degrading defendant's conduct as depicted by the witness may have been, his conviction should not be sustained unless the evidence suffices to prove the existence of each essential ingredient of the *crimes for*

*which he was being tried." State v. Robinson*, 310 N.C. 530, 534, 313 S.E.2d 571, 574 (1984) (citation and quotation marks omitted) (emphasis added).

We hold that where the victim did testify at trial but failed to testify as to any sexual act[3] with defendant and where the victim never made any prior statement that any sexual act ever occurred with defendant, and where no other strong corroborating evidence of the defendant's extrajudicial statement is offered by the State, the defendant's extrajudicial statement alone is not sufficient to support his conviction for first degree sexual offense. The judgment of the trial court as to first degree sexual offense is reversed with instructions to dismiss the charge of first degree sexual offense against defendant.

### III. Indecent Liberties

[2] Defendant also moved to dismiss the charge under N.C. Gen. Stat. § 14-202.1 for indecent liberties. To survive a motion to dismiss for indecent liberties, the State must present substantial evidence of each of the following elements:

> (1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Stanford*, 169 N.C. App. 214, 216-17, 609 S.E.2d 468, 470 (citation omitted), *disc. review denied and appeal dismissed*, 359 N.C. 642, 617 S.E.2d 657 (2005).

> [I]t is not necessary that defendant touch his victim to commit an immoral, improper, or indecent liberty within the meaning of the statute. Thus it has been held that the photographing of a naked child in a sexually suggestive pose is an activity contemplated by the statute, as is masturbation within a child's sight, and a defendant's act of exposing his penis and placing his hand upon it while in close proximity to a child. These decisions demonstrate that a variety of acts may be considered indecent and may be performed to provide sexual gratification to the actor. Indeed, the legislature

---

3. Vaginal intercourse is expressly excluded from the definition of "sexual act" for purposes of defining the elements of first degree sexual offense. N.C. Gen. Stat. § 14-27.1(4) (2001).

enacted section 14-202.1 to encompass more types of deviant behavior, giving children broader protection than available under other statutes proscribing sexual acts.

*State v. Etheridge*, 319 N.C. 34, 49, 352 S.E.2d 673, 682 (1987) (internal citations and quotations omitted).

Viewing the evidence in the light most favorable to the State, even though the jury's acquittal of defendant of rape shows that they disbelieved at least part of Karen's account of the facts, the evidence does support a finding that defendant undressed Karen and exposed his penis to her at his home. This evidence is sufficient to support defendant's conviction for indecent liberties with a child. *Etheridge*, 319 N.C. at 49, 352 S.E.2d at 682 (defendant's actions in ordering his victim to undress and lie down, then exposing his penis before proceeding with the act of intercourse fell "well within the broad category of indecent liberties"). This assignment of error is therefore overruled.

[3] Defendant next contends that the trial court committed plain error by not requiring the State to identify the alleged acts by defendant which were the basis of the sex offense and indecent liberties charges and by not identifying the basis for these charges to the jury in its instructions. Due to our ruling as to the sex offense charge above, we need only address defendant's assignment of error as to indecent liberties. Defendant failed to object to the jury instructions, so we review the instructions only for plain error. N.C.R. App. P. 10(c)(4).

Plain error with respect to jury instructions requires the error be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected. Further, in deciding whether a defect in the jury instruction constitutes plain error, the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt.

*State v. Wood*, 185 N.C. App. 227, 232, 647 S.E.2d 679, 684, *disc. review denied*, 361 N.C. 703, 655 S.E.2d 402 (2007) (internal citations, brackets and quotation marks omitted). As we noted above, defendant argues that the State never clearly identified which acts it claimed constituted indecent liberties. Certainly, after exhaustive review of

the transcript and record, we have been unable to discern which acts the State claimed at trial constituted indecent liberties. Even the State notes in its brief that "[t]he evidence below showed a single incident when Defendant allegedly received fellatio from [Karen] on Defendant's overnight stay in [Karen's home]. *There was no other evidence which would tending [sic] to prove a first degree sexual offense or indecent liberty*[.]" (Emphasis added.)

However, we have determined above that there was other evidence of indecent liberties, based upon defendant's undressing Karen and exposing himself to her. When we consider the entire record, the instructions as a whole, and the fact that the trial court erred in its failure to grant defendant's motion to dismiss the first degree sexual offense charge, we conclude that the jury probably would have reached a different verdict if it had been instructed properly. Since the State itself did not even identify the evidentiary basis which we have found for the indecent liberties conviction, but instead was relying upon an act of fellatio which we have determined is not a proper basis for conviction under the *corpus delicti* rule, we conclude that the jury was also confused by the instructions and contentions.

Certainly the jury found that something bad involving defendant was going on at Karen's home around Christmas 2002, but the jury instructions as given simply do not delineate the issues clearly enough that we can find an absence of plain error, particularly in light of the distinct possibility that the jury considered fellatio as defendant's main criminal sexual act with Karen. We therefore remand for new trial on the issue of indecent liberties by defendant.

### IV. Conclusion

Based upon our rulings on the above issues, we need not address any of the other issues raised by defendant, as they will probably not occur at a new trial. Defendant's conviction for first degree sexual offense is reversed, and the case is remanded for new trial on the issue of indecent liberties.

Reversed in part, remanded in part.

Judge McCULLOUGH concurs.

Judge TYSON dissents in a separate opinion.

**STATE v. SMITH**

[190 N.C. App. 44 (2008)]

TYSON, Judge dissenting.

The majority's opinion erroneously: (1) reverses defendant's first-degree sexual offense conviction and (2) grants defendant a new trial on the issue of indecent liberties. I disagree and find no error in defendant's convictions. I respectfully dissent.

## I. First-Degree Sexual Offense

Defendant argues and the majority's opinion agrees that the trial court erred by denying defendant's motions to dismiss the first-degree sexual offense charge at the close of the State's evidence and again at the close of all the evidence. Defendant asserts the State failed to meet its burden under the *corpus delicti* rule, which requires the introduction of independent substantial evidence tending to establish the trustworthiness of defendant's extrajudicial confession. *State v. Parker*, 315 N.C. 222, 229, 337 S.E.2d 487, 491 (1985). I disagree.

## A. Standard of Review

The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005) (internal citations and quotations omitted).

## B. Analysis

A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

N.C. Gen. Stat. § 14-27.4(a)(1) (2001).

A "sexual act" is defined as:

cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body: provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes.

N.C. Gen. Stat. § 14-27.1(4) (2001). The majority's opinion holds the State failed to present any corroborating evidence beyond defendant's confession that established the victim ("K.L.C.") performed fellatio on defendant.

In support of its holding, the majority's opinion states, "[w]hen the State relies on a defendant's extrajudicial statement to establish guilt, the extrajudicial statement alone is not sufficient to sustain a conviction." *See Parker*, 315 N.C. at 229, 337 S.E.2d at 491 ("Our research reveals that the rule is quite universal that an extrajudicial confession, standing alone, is not sufficient to sustain a conviction of a crime.").

The historical justifications for the *corpus delicti* rule include:

first, the shock which resulted from those rare but widely reported cases in which the "victim" returned alive after his supposed murderer had been convicted . . .; and secondly, the general distrust of extrajudicial confessions stemming from the possibilities that a confession may have been erroneously reported or construed . . ., involuntarily made . . ., mistaken as to law or fact, or falsely volunteered by an insane or mentally disturbed individual . . . and, thirdly, the realization that sound law enforcement requires police investigations which extend beyond the words of the accused.

*Id.* at 233, 337 S.E.2d at 493 (citation omitted).

In *Parker*, our Supreme Court enunciated a more flexible version of the *corpus delicti* rule applicable in North Carolina:

We adopt a rule in non-capital cases that when the State relies upon the defendant's confession to obtain a conviction, it is no longer necessary that there be independent proof tending to establish the *corpus delicti* of the crime charged if the accused's confession is supported by *substantial independent evidence tending to establish its trustworthiness, including facts that*

*tend to show the defendant had the opportunity to commit the crime.*

We wish to emphasize, however, that when independent proof of loss or injury is lacking, there must be strong corroboration of essential facts and circumstances embraced in the defendant's confession. Corroboration of insignificant facts or those unrelated to the commission of the crime will not suffice. We emphasize this point because although we have relaxed our corroboration rule somewhat, we remain advertent to the reason for its existence, that is, to protect against convictions for crimes that have not in fact occurred.

*Id.* at 236, 337 S.E.2d at 495 (emphasis supplied).

Here, in response to K.L.C.'s rape allegation, defendant gave a voluntary statement to Cleveland County Sheriff's Detective Debbie Arrowood ("Detective Arrowood"). Defendant stated that on the night of 27 December 2002 defendant drove himself, K.L.C., and his child to his residence in order to obtain diapers and formula. Defendant stated he told K.L.C. to stay inside the vehicle with the child, but K.L.C. did not comply with his request and brought the child inside the residence. Defendant stated that he was only inside the residence for approximately ten minutes and vehemently denied having any sexual contact with K.L.C.

Approximately two hours later, Detective Arrowood interviewed defendant a second time. Defendant stated that a few days prior to 27 December 2002 he had consumed alcohol at K.L.C.'s brother's ("J.J.") residence and laid down in J.J.'s bed. K.L.C. came into the room, removed her pants, and laid down beside defendant. Defendant stated K.L.C. wanted him to perform oral sex on her, but defendant refused. K.L.C. unzipped defendant's pants and attempted to perform fellatio on him. Defendant was unable to obtain an erection due to his consumption of alcohol so K.L.C. stopped. Defendant specifically stated to Detective Arrowood, "Yes, it was a stupid mistake and it has ruined my life."

The majority's opinion argues the State failed to introduce sufficient corroborating evidence to establish the trustworthiness of defendant's extrajudicial and voluntary confession. I disagree.

At trial, J.J., the victim's brother, testified that he accompanied defendant to the police station because he did not believe "[his] friend would have done something like that[.]" J.J. specifically testi-

fied to the events that occurred after defendant had finished his interview and provided his confession to Detective Arrowood:

[ADA]: What happened on that day that changed your mind? Did he talk to you about what happened?

[J.J.]: *He just admitted that he had let [K.L.C.] give him oral sex.*

[ADA]: That's what he said to you?

[J.J.]: Yes, ma'am.

[ADA]: What else did he say?

[J.J.]: That was it. We didn't speak much more after that. I just went back to [his] house and got my stuff and went home.

[ADA]: I mean, how did that conversation take place? Did he— was he upset?

[J.J.]: He was upset when he come [sic] out of Ms. Arrowood's office.

[ADA]: And did you ask him a question? Did he say something to you?

[J.J.]: I asked him what happened, you know, and he told me that he had, you know, failed, and he admitted to having oral sex with [K.L.C.].

[ADA]: Did he say anything like he was sorry or he shouldn't have done that?

[J.J.]: He said he was sorry, that it wasn't right, but it still don't [sic] change the fact.

(Emphasis supplied).

The majority's opinion states, "[J.J.'s] testimony as to what defendant told him after defendant left the office of Detective Arrowood was not "independent of defendant's confession," . . . therefore it has no more probative value than the more detailed statement which defendant gave to Detective Arrowood and does nothing to corroborate defendant's statement[.]" I disagree.

Defendant was under no duty or obligation to tell J.J. what had transpired during his interview with Detective Arrowood. The fact that defendant: (1) admitted he allowed K.L.C. to perform fellatio on

him; (2) had a somber demeanor after the interview; and (3) apologized to J.J. for his behavior, tends to establish the trustworthiness of and corroborate defendant's extrajudicial confession.

Further, although defendant changed his version of the events that had occurred at trial, he testified to the same time, place, and circumstances surrounding the incident. Defendant testified that on the night of 26 December 2002 at approximately 8:00 p.m., he arrived at J.J.'s residence in order to "continue drinking." By the end of the evening defendant had allegedly consumed twenty-four beers and was unable to walk by himself. At approximately 10:00 p.m., J.J. helped defendant up the stairs and defendant "passed out" in J.J.'s bed. Defendant testified:

[Defendant]: Yes, I was awakened. I was awakened a couple of hours after I had passed out.

[Defense Attorney]: Tell the jury, if you will, what awakened you.

[Defendant]: When I came to, I felt something on me. I didn't know what it was, who it was. I panicked. I was frightened, shocked, and all in one motion, I rose up and kicked. And when I kicked, I looked in [sic] the floor and it was [K.L.C.] sitting in [sic] the floor. I jumped up and I asked her what the h-ll she was doing. I zipped my pants up. I remember rubbing my eyes, rubbing my head, trying to collect myself and still, still drunk, not collected, hung over, and she was begging me not to say anything to her mother: "Please don't tell mama; please don't tell Cassie; please don't tell [J.J.]." . . . .

. . . .

It was a feeling that—it's not like being tapped on the shoulder. It's a feeling not being tapped on your forehead, being shook. It's a private position—a private place that's a sensitive area, and I felt something on my penis.

By defendant's own testimony, it is undisputed that: (1) defendant was lying in J.J's bed on the night in question; (2) K.L.C. came into the bedroom and unzipped defendant's pants; and (3) defendant "felt something on [his] penis."

Although defendant's testimony does not exactly mirror his earlier confession, these variances do not warrant a reversal of his first-degree sexual offense conviction and the issue was for the jury to decide. Our Supreme Court has adopted a flexible *corpus delicti* rule:

**STATE v. SMITH**

[190 N.C. App. 44 (2008)]

"we need not adhere to our strict rule requiring independent *proof* of the *corpus delicti* in order to guard against the possibility that a defendant will be convicted of a crime that has not been committed." *Id.* at 235, 337 S.E.2d at 494 (emphasis supplied). All that is required is "substantial independent evidence tending to establish [the] trustworthiness [of defendant's extrajudicial confession], including facts that tend to show the defendant had the opportunity to commit the crime." *Id.* at 236, 337 S.E.2d at 495.

Based upon J.J.'s and defendant's own testimony at trial, the State presented sufficient evidence to meet its burden under the *corpus delicti* rule. This is not a case where a defendant's confession was "erroneously reported," "involuntarily made," or "falsely volunteered by an insane or mentally disturbed individual." *Id.* at 233, 337 S.E.2d at 493.

This case involves a young adult male who made a bad decision to involve himself sexually with a minor female. An alleged rape victim's decision not to testify about a prior incident in which she voluntarily performed a sexual act on her alleged attacker does not establish a lack of trustworthiness of defendant's confession. Viewing the evidence in the light most favorable to the State, the trial court properly denied defendant's motions to dismiss. Defendant's first-degree sexual offense conviction should be sustained.

## II.  Indecent Liberties

Defendant argues the trial court erred by denying his motions to dismiss the indecent liberties charge. I disagree.

The majority's opinion holds that the evidence presented at trial supports defendant's conviction for indecent liberties based upon: (1) defendant undressing K.L.C. and (2) exposing his penis to her at his residence. However, the majority's opinion awards defendant a new trial on the issues of indecent liberties and states:

Since the State itself did not even identify the evidentiary basis which we have found for the indecent liberties conviction, but instead was relying upon an act of fellatio which we have determined is not a proper basis for conviction under the *corpus delicti* rule, we conclude that the jury was also confused by the instructions and contentions.

Because the "act of fellatio" was a proper basis for defendant's first-degree sexual offense conviction, it is also a proper basis for

defendant's indecent liberties conviction. *See State v. Lawrence*, 360 N.C. 368, 375, 627 S.E.2d 609, 613 (2006) ("[A] defendant may be unanimously convicted of indecent liberties even if: (1) the jurors considered a higher number of incidents of immoral or indecent behavior than the number of counts charged, and (2) the indictments lacked specific details to identify the specific incidents."). The trial court properly denied defendant's motions to dismiss.

### III.  Conclusion

Based upon J.J.'s and defendant's own testimony at trial, the State presented substantial independent evidence tending to establish the trustworthiness of defendant's extrajudicial confession to meet its burden under the *corpus delicti* rule. *Parker*, 315 N.C. at 229, 337 S.E.2d at 491. The trial court properly denied defendant's motions to dismiss his first-degree sexual offense and indecent liberties charges. I find no error in defendant's convictions and respectfully dissent.